## DILLS *v.* THE STATE.

WITNESS.—*Physician and Surgeon as Expert.*—*Compensation.*—*Contempt.*—A physician and surgeon can not be required to testify as an expert, by giving his professional opinion, over his objection to doing so, unless compensated therefor by a professional fee, before so testifying; and his refusal to so testify unless so compensated is not a contempt. (BIDDLE, C. J., and NIBLACK, J., dissented; opinion by the former.)

From the Allen Circuit Court.

*W. H. Coombs, J. Morris* and *R. C. Bell,* for appellant.

*S. M. Hench,* Prosecuting Attorney, for the State.

BIDDLE, C. J.—Thomas J. Dills, M.D., a physician and surgeon, having been duly subpœnaed to testify in behalf of the defendant, Robert Hamilton, who had been indicted, and was then on trial before the court and jury, for an alleged rape on Catherine A. Warstler, and having appeared and been duly sworn, testified as follows: That he was a practising physician and surgeon in the city of Fort Wayne; that he was a graduate of the Medical College of Michigan, at Ann Arbor; that, since he had so graduated, he had attended medical lectures in New York.

The witness was then asked the following question:

"State whether or not, in cases of female menstruation, and toward the termination of the period, there is sometimes a retention of a portion of the menses?"

The witness refused to answer the question directly, but made the following statement:

"I did not offer my services here, any more than I do my professional services elsewhere. I was sent for and have come. My time and my skill are my capital, and I can not surrender them gratuitously to any but the poor, since it is by my professional opinion that I earn my living. There is a distinction between a man who sees a fact and is called to prove it in a court of justice, and that of a man who is selected to give his opinion on a matter with which he is peculiarly conversant, from the nature of his employment in life. The former is bound, as a matter of public duty, to speak to a fact which happens to have fallen within his knowledge. Without such testimony, the course of justice would be stopped. The latter is under no such obligation. For the above-named reasons, I respectfully decline to give the opinion of an expert in the case now pending, except upon the payment of my fee in advance."

The witness still refusing to answer, the court adjudged, "that the said Thomas J. Dills be committed to the custody of the sheriff of Allen county, and that he be confined in the jail of said county, until he shall consent to testify in said case, and answer said question, or until otherwise discharged by due course of law."

From this judgment the witness appealed to this court, and has properly presented the question involved by his assignment of errors.

By the common law, no fees were fixed for witnesses. They were commanded by the king's writ of *subpœna ad testificandum,* to lay aside all pretences and excuses, and appear at the trial to testify, under the penalty of a certain sum—generally one hundred pounds—to be forfeited to the king. The statute of 5 Eliz. c. 9 added a penalty of ten pounds to the party aggrieved, and damages equivalent to the loss sustained by the want of his evidence. But no witness, except within the bills of mortal-

ity—a district within which the births and deaths were officially recorded—was bound to either appear or testify, unless his reasonable expenses, not fees for services, were paid or tendered to him. · Within the bills of mortality, he was compelled to appear and testify, whether paid or not.

Upon the power of a subpœna, Blackstone remarks:

" This compulsory process, to bring in unwilling witnesses, and the additional terrors of an attachment in case of disobedience, are of excellent use in the thorough investigation of truth: and, upon the same principle, in the Athenian courts, the witnesses who were summoned to attend the trial had the choice of three things; either to swear to the truth of the fact in question, to deny or abjure it, or else pay a fine of a thousand drachmas.' 3 Bl. Com. 369.

But, to the shame of English jurisprudence, a prisoner accused of a capital offence was denied the right to counsel on his behalf, or the right to exculpate himself by the testimony of witnesses. This inhuman rule was softened by Queen Mary I., not by law, but merely by the favor or caprice of the crown. By statute 34 Eliz. c. 4, a prisoner, charged with certain felonies, was allowed to " make any lawful proof that he could " in his defence. But the witnesses were not required to be sworn, and, therefore, were under no legal obligations to tell the truth. It was not until the statute 1 Ann, c. 9, that, in all cases of treason or felony, the prisoner was entitled to have witnesses on his behalf examined under oath. In England now, the prisoner has the same rights as the crown, to compel witnesses to appear and testify on his behalf. In America, since the Revolution, the prisoner has always had the right to procure the attendance of witnesses, and compel them to testify, the same as the State.

Certain powers and rights belong to a State inherently. They are not granted, and can not be denied, and are such

as without which a State can not exist. The word " State " implies them as much as the name " man " implies life. Amongst these powers are the right of eminent domain, the right of taxation, the power to command the militia, the right to punish crime, and the power to compel testimony. But a wise and just State will not exercise these powers to the injury of those who are governed by it, nor except by due course of law. A State will not command the particular services, nor take the property of an individual, without compensation, nor tax person or property without protection, nor command the soldier without pay, nor punish except for the public good, nor command the testimony of witnesses without just grounds.

Ever since the existence of the State of Indiana, the accused, in a criminal prosecution, has had the right " to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." Sec. 13, art. 1, Constitution 1851, and sec. 13, art. 1, Constitution 1816. And under sec. 21, art. 1, Constitution 1851, declaring that " No man's particular services shall be demanded without just compensation," it has been held, that the services of witnesses in criminal cases are not " particular services," within the meaning of this provision, but are of the class of general services, which any man is bound to render for his own and the general good. *Israel* v. *The State*, 8 Ind. 467. It has also been held, that the services of officers entitled to fees and salaries fixed by law are not " particular services," within the meaning of the constitution. *Falkenburgh* v. *Jones*, 5 Ind. 296; *The Board of Comm'rs, etc.*, v. *Blake*, 21 Ind. 32. The case of *Webb* v. *Baird*, 6 Ind. 13, does not conflict with the above cases, nor does it seem to us to support the appellant in this case.

In that case, it was held that an attorney was not bound, under an appointment by the court, to render services in the defence of a pauper, on a criminal charge, without compensation, because such services were " par-

ticular services," within the meaning of the constitution; but it does not hold that he was entitled to compensation before he rendered the services. The case of *Blythe* v. *The State*, 4 Ind. 525, is the same, except that it holds that Blythe was not in contempt for refusing to serve as attorney for a pauper, under an appointment by the court. But there is a clear distinction between these cases and the one at bar. If the court, in this case, had ordered the appellant to render his services, as a physician, to the defendant in the criminal case, in the treatment of a disease, then the cases would have been analogous; but the services of a physician, as a physician, to an individual, are very different from the services of a physician to the public as a witness, under the command of the State, although his testimony may involve professional skill. The one case is compelling one man to render services to another for his private good, the other is compelling him to render services to the State for the public good.

A subpœna is a writ, wherein the State commands the witness to appear and testify, not for the sake of the plaintiff or defendant, either in a criminal or civil case, but for the investigation of truth and the adjudication of right. The administration of justice is the highest duty and crowning excellence of a State; and, without the power to compel a witness to appear and testify, this duty would be embarrassed, and this great public good unattained. And in this we can perceive no difference whether a witness is called as an expert or as to ordinary facts. In judicial trials, justice demands the truth as to facts in all the departments of human knowledge, and the State has the right to compel witnesses to appear and testify concerning all matters within their knowledge, belonging to human affairs, wherein their testimony is not prohibited by law.

The appellant attempts to justify himself, upon the ground that his professional knowledge is his private

property, but admits that the State may command him to appear as a witness, and compel him to testify, like other witnesses, as to ordinary facts, not involving the skill of his profession. It seems to us, that this is an admission of the principle which must decide the case against him. (His professional skill is no more his property than his time is; for, without time, his skill would be useless.) Nor can we see that the right of property he holds in his skill is of any higher degree, as property—though of a higher degree in knowledge—or any more under the protection of the law, than the property in the muscular strength of the common laborer; nor that he has any more right to withhold his skilled knowledge, than his knowledge of the most ordinary fact. Justice demands that every witness should testify, under the rules of law, to what he knows of the case in which he is called, whether he testifies as an expert, or as to facts, or as to common or skilled knowledge.

With such research as our time allowed us, we found no case, in all the books at our command, which is exactly at one with our own views, until, during the preparation of this opinion, we received a case, recently decided by the Supreme Court of Alabama, *Ex parte Dement*, 5 Reporter, 138, not yet reported, which is so nearly in point, that we state it:

One Kit Barnard was on trial in the Circuit Court of Madison, on a charge of murder. Dr. J. J. Dement, the petitioner, was introduced as a witness for the State, the solicitor stating that he desired to examine him as an expert. After testifying that he was a physician, and had seen the deceased after he had received the wound, which, the prosecution asserted, had produced death, he was asked to state the nature and character of the wound received. This Dr. Dement declined to do, upon the ground that "he had not been remunerated for his professional opinion, nor had compensation for his professional opinion been promised or secured."

The court informed the witness that it was his duty to answer, and, upon his declining to do so, imposed a fine of five dollars for a contempt of court. Afterwards, the petitioner moved to have the fine set aside, on the ground that it was illegal, the court not having the power to compel the petitioner to testify as a professional expert, until compensation for his professional opinion was first paid or secured. The court overruled the motion, and judgment for the fine was entered accordingly.

In this case, the Supreme Court, after having examined numerous authorities, remarked : "It will be noticed, that it has not been adjudged in any of the cases cited, that a physician or other person, examined as an expert, is entitled to be paid for his testimony as for a professional opinion. The reports contain nothing to this effect." The court, in the course of its opinion, also quotes with approval, from "Best's Principles of Law and Evidence," as follows : " The law allows no excuse for withholding evidence which is relevant to the matters in question before its tribunals, and is not protected from disclosure by some principle of legal policy." Also, from TINDAL, C. J.: " There is no reason for assuming that the time of medical men and attorneys is more valuable than that of others whose livelihood depends upon their own exertions."

The court afterwards, for itself, says :

" And the same principle which justifies the bringing of the mechanic from his work-shop, the merchant from his storehouse, the broker from change, or the lawyer from his engagements, to testify in regard to some matter which he has learned in the exercise of his art or profession, authorizes the summoning of a physician, or surgeon, or skilled apothecary, to testify of a like matter, when relevant to a cause pending for determination in a judicial tribunal."

And the court finally holds, that " A physician, like any other person, may be called to testify as an expert in a judicial investigation, whether it be of a

civil or criminal nature, without being paid for his testimony as for a professional opinion, and, upon refusal to testify, is punishable as for a contempt."

The judgment below was affirmed by the Supreme Court.

From this review of the question before us, it is plain that all persons within the jurisdiction of the State, competent to testify, owe service as witnesses to the judicial tribunals having jurisdiction over them, to appear and testify as to all facts within their knowledge, and properly in the case, whether skilled or unskilled, except such as are protected by public policy; and, when properly summoned, they must appear and testify, under such restrictions and for such compensation as the law provides; and, in default of rendering such service, they will be in contempt, and subject to punishment. The duty of a witness is often onerous, and sometimes presses hard on individuals, but it rests alike upon all, for the sake of all, and should be cheerfully rendered in support of justice, public order, and the general good, without any other compensation than the fees provided by law.

Mr. Best, in referring to a passage in a work of Jeremy Bentham, puts the following illustration:

" Were the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing in the same coach, while a chimney-sweeper and a barrow-woman were in dispute about a half-penny worth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No! Most certainly not."

To establish courts and command them to administer justice, and then deny them the power to perform their duty, would be a solecism in government; to distinguish between kinds of knowledge, and give the courts the power, in a judicial investigation, to obtain one kind, and not another kind, when all kinds of human knowledge are necessary to the administration of justice, would be a

legal absurdity; and to classify witnesses into professional and unprofessional, and compel unprofessional witnesses to appear and testify as to common facts, and not compel professional witnesses to testify as experts, when the case requires testimony as to both kinds of knowledge, would be an unjust inconsistency.

In England now, notwithstanding the former severity of her laws against prisoners, all persons within the realm, whether they belong to royalty, nobility, aristocracy or commonalty, and whether professional or unprofessional, except the sovereign and foreign ambassadors, may be compelled to appear and testify in a judicial tribunal; and this is the modern spirit of all nations, wherever either the civil law or the common law prevails.

Under the constitution, this State may take private property for public use, without compensation first assessed and tendered; and we think the State may command the public services of a witness, without compensation first paid or tendered. Since the organization of the State, there has been no time when the courts had not the power to require the attendance of witnesses, and compel them to testify, under the penalties of attachment, fine and imprisonment, without their fees first having been tendered or paid.

In section 13, article 1, of the present constitution of this State, it is declared: "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offence shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

A fair construction of this section, it seems to us, must settle the question, not only that the prisoner has the right to process, to compel the attendance of all classes of witnesses on his behalf, but also the right that they shall

be compelled to testify; and, being a constitutional right, neither the legislature nor the courts can take it from him, for it would be a mere mockery of justice, to compel a witness to attend the court, without the power to compel him to testify. This power has never been questioned, as far as we know, until in the present case; and long acquiescence in uniform rulings is a strong argument in their favor, even if not otherwise supported. Under our present code, in civil cases, "Witnesses residing in the county where the court is held shall be compelled to attend in obedience to the summons, without payment or tender of fees being first made." 2 R. S. 1876, p. 131. "And witnesses on behalf of the State, or of the defendant in a criminal prosecution, may be compelled to attend and testify in open court, if they have been subpœnaed, without their fees being first paid or tendered, unless otherwise provided by law." 2 R. S. 1876, p. 394. In this latter statute, it will be noticed that the power of the court is not limited to the county wherein it is held, but may be exercised throughout the State, and that the witness may not only be compelled to attend, but also be compelled to testify. There is no other provision of the law, as far as we can ascertain. And not only have the courts power to compel witnesses so to attend and testify, but they have the power to compel a witness to give his recognizance, with surety, that he will attend and testify at a subsequent term of the court; and this, without first paying or tendering his fees. In the exercise of these powers, throughout the statutes and the decisions in this State, we have found no instance wherein any distinction was made between a witness to common facts, and one called to testify as an expert, and no case wherein the question of such a distinction was ever raised. The consequences following the principles contended for by the appellant, if they were established as law, would enable prisoners, who had the means to pay professional

fees to their witnesses, to obtain a fair trial, and to deny a fair trial to those who were unable to meet its expenses.

Such a system of jurisprudence, in our opinion, would be discreditable to a civilized State.

We think the judgment should be affirmed.

NIBLACK, J., concurs in this opinion, but the majority of our brother judges do not concur therein. By the authority, therefore, of the case of *Buchman* v. *The State*, decided at the present term, *ante*, p. 1, the judgment is reversed, and the cause remanded for further proceedings.