Mr. Justice Hagner
delivered the opinion of the Court:
*492 This is an application by Mrs. Truesdell, who was one of the lot owners in what is called the territory condemned for the Rock Creek Park. Her petition sets forth that in her attempts to. prove the true value of her property, she summoned certain persons who were examined as experts to prove there was a gold deposit upon it, and that the United States examined witnesses as experts in opposition to that claim; that the property has been condemned and the money awarded has been received; that several of these witnesses have been paid at the rate of $1.25 per day, although those remunerated in this way are really expert witnesses and their services were worth much' more than those of ordinary witnesses; that they should be compensated on a different principle, and that according to law, and particularly under the proper construction of the statute under which the condemnation was made, it is proper the United States should make a sufficient allowance to enable her to pay them such compensation as should be properly paid to expert witnesses.
The last section of the Rock Creek Park statute declares the marshal shall provide suitable accommodations and summon such witnesses as may be desired by any party to these proceedings, and that the expense of service of summons, as well as the clerk’s fee for issuing subpoenas and the attendance fees of witnesses, shall be paid by the United States as a cost incident to the condemnation.
It is stated the United States is willing to pay to all these witnesses, and has already paid some of them, the ordinary witness fees; but declines to pay this claim for their charges as experts: although some witnesses summoned as experts by the United States have been already paid at the rate of $25 per day for their services, and in addition have received compensation for mileage; and the application insists a similar allowance should be made- to these witnesses on behalf of the petitioner, to be paid by the United States out of the fund appropriated by the statute.
The question is a novel one here, .and its examination *493 has involved a good deal of trouble and research. We find the law to be this:
The well settled rule is that any person who has knowledge of any fact important to a party litigant, may be obliged to appear and testify to that fact, whether he desires to do so or not. Bentham’s illustration is, that if the Prince of Wales, the Archbishop of Canterbury and the Lord Chancellor when riding together should witness an altercation between a costermonger and an apple-woman, upon the summons of either party to bear witness as to what they had seen and heard of the transaction, they would be obliged to appear and testify as to the facts upon the same terms as ordinary witnesses. But the case is different where a person is summoned, to testify not as to facts, but to give the result of his knowledge upon a question of a scientific character involved in the suit. That is sc*mething which such person is no more obliged to communicate without compensation to a court or jury, than he is to give gratuitously to the general public the result of his erudition upon any subject involving research; for this is his own property,-his stock in ^rade, which he can no moré be required to present as a free gift to the public, than the merchant can be forced to surrender his goods at the bidding of a court, for the public benefit. Whether such a witness could be compelled to testify at all on such subjects, was at first a question of difficulty; but that was solved in favor of his obligation to do so, where his reasonable fees, beyond the common witness fees, had been tendered him. In re Roelker, 1 Sprague, Circuit Court U. S., 276. The next inquiry, whether the compensation was to be taxed as a part of the legal costs, has been settled in England, where special allowances are made as part of the costs, each party paying his own fees and then having them taxed as costs in the case. We have found no case in England where the losing party has been called upon to pay as- part of -the costs incurred by the victorious party, the moneys laid out by the latter in compensating his expert witnesses.
*494 In this country, the entire subject seems to be unsettled; and in view of the conflicting decisions,' it may be said to be undecided’whether witnesses testifying as experts are generally entitled to have their compensation taxed as part of the costs. In some States there are statutes requiring such taxation, subject to the control of the court as to the amount; while in others there is an entire absence of legislation on the subject.
In Indiana such taxation is forbidden by a statute, passed apparently in consequence of a decision of its appellate court in a case where a physician, duly summoned, when required to give his opinion as to the probable course of a ball; being an anatomical question involved in a case of homicide, objected upon the ground that he had not been paid such compensation as was reasonable for his services as an expert, and payment not being made, he positively declined to testify. Having been committed for contempt of court, the Court .of Appeals decided the committal was wrong and that he had the right to remain silent. Buchman vs. State, 59 Ind., 1; U. S. vs. Howe, Dist. Court of Arkansas, 12 Cent. L. J., 193.
In other States, as in Alabama (53 Ala., 389, Ex parte Dement), and in Texas (5 Texas App., 374; Summers vs. State), an opposite view is held. In a case reported in 104 Mass., 537, in the matter of Clark and the Attorney-General, two witnesses were summoned in behalf of a criminal, in a capital case, one of whom was examined as an expert and the other was not. The Court of Appeals there decided to allo-yv a reasonable compensation to be paid out of the funds of the State, to be approved by the Attorney-General, holding that such witnesses ought to be placed in a different category from ordinary witnesses as to the amount of their compensation; and that, under the circumstances of the case (the Attorney-General submitting the whole Question for the décision of the court), they were as much entitled to be paid a proper exceptional sum, as ordinary witnesses were to receive the usual per diem allowance.
*495 In this jurisdiction and in Maryland, there is neither a statute, nor is there any decision on the subject.
The solution of the inquiry must be governed in a great degree by the Rock Creek Park statute itself.
That the United States has already paid its expert witnesses such extra compensation cannot be held to be conclusive on this subject. But we think that giving a reasonably fair and equitable construction to this statute, and bearing in mind that the United States cannot be supposed to be willing to take the property of the citizen without just and equitable compensation; that it is necessary its agents should be fully informed of all the constituents of value before it can be ascertained what would be such just and equitable compensation; there should be an allowance made for a reasonable number of such expert witnesses, summoned on the part of the owners of the land, in good faith;, and that such allowance should include reasonable mileage for traveling expenses actually incurred for attendance on this commission alone. That is to say, if a man from Kansas, who had come to Washington on other business, were summoned before tire" commission, of course his mileage from Kansas should not be charged against the commission.
We think we ought to refer this matter to the auditor to take testimony on this, subject and report to this court, and we will pass an order to this effect. We desire it to be understood that this ruling is so far governed by the terms of the Rock Creek Park statute that it is not to be considered as a decision on the general subject, apart from that statute. This reservation is important, as only the ordinary cotapensation of witnesses in this jurisdiction is provided for by law.
We also intend to be understood as speaking only of such experts as testified here in reference to gold deposits; and to none others. Such witnesses as testified only with reference to the general value of the land we conceive are not to be considered as experts.
The question of the proficiency and qualification of such *496 of the witnesses as are claimed to have been experts, is one with reference to which testimony will be taken before the auditor; and that will be reported for our decision with' the other evidence he may take.
Upon the foregoing reference to the auditor, testimony was taken before him, and his report filed, to which exceptions were taken, and argued before the same Justices sitting in General Term as heard the original application. On April 1st, 1893, the following opinion was delivered. — Reporters.
Mr. Justice Hagner delivered the opinion of the Court:
An application was made to us in behalf of Mrs. Truesdell to authorize payment out of the fund in court of certain amounts claimed to have been expended by her and of indebtedness incurred by her, in the employment of expert witnesses, to testify before the commission.
The particular point of inquiry before the appraisers at the time was whether or no there was an underlying stratum of gold on Truesdell’s land; and if such was the case, what was its value. We passed the following order, which subsequently was enlarged so as to embrace a similar claim presented by Mr. Shoemaker: “ Ordered, that the matters of said applications be and the same are referred to the auditor of this court, to ascertain and report to this court the names of any witnesses who were produced and properly testified as experts before said commission with respect to the existence or value of any gold-bearing quartz on said designated lots of land; that in making such ascertainment the auditor shall examine the record of the testimony of such alleged experts, as given before said commission and now existing among the papers of said commission, together with such other testimony bearing on this inquiiy as may be produced before the auditor by said applicants or by the United States; but no compensation shall be made to any witness, called as an expert, who testified only to the general value of said land, or who was not qualified to speak as an ■expert by reason of special or scientific knowledge respect *497 ing gold-bearing quartz or auriferous earth or gold-mining explorations; the competency of said witnesses to testify as experts to be hereafter considered by the court; that where any such witness testified on one day for one of said applicants or for any other person with respect to said subjects, he shall not be allowed for attendance as witness on such_day for any other person; that the auditor shall ascertain by testimony to be taken by him what would be a reasonable compensation for the services of such expert witnesses per diem ; that the auditor shall also ascertain and report to the court what would be a reasonable allowance by way of mileage or traveling expenses for any such expert witness in addition to the per diem allowance; but no such witness shall be entitled to such allowance for mileage or traveling expenses, unless he came on to Washington City expressly for the purpose of testifying as such witness in the Rock Creek cases, for the said applicants or one of them.”
The auditor took testimony on these points in behalf of the claimants and of the United States; circumscribing the range of the examination within the lines laid down by the court in its order.
Among the witnesses adduced by the claimants before the commission were several practical miners, who, it was insisted, should be regarded as experts, although they made no claim to be ranked as scientists. One or two of the witnesses examined before the auditor, classed themselves as scientists. We think such practical miners are quite as likely to be correct in their opinions as to the value of “ prospects,” and perhaps more so, than the scholars, whose knowledge is exclusively or chiefly derived from books.
Rather an unsavory scandal in our public history resulted from people relying too much upon the testimony of scientists, as to the existence and value of deposits of precious metals in what was called the Emma Mine. In that case the promoters of the speculation relied with great confidence upon the opinion of Mr. Silliman, who bore a deservedly *498 great n'ame in the scientific world. There was no reason to believe he was not acting honestly when he declared the mine was undoubtedly very rich; and yet the scientist proved to be in error, and the mine turned out to be practically worthless. On the other hand, the history of mining shows that gold and silver mines have been repeatedly discovered and their value accurately predicted, by men who could scarcely read and probably knew little or nothing of scientific metallurgy beyond the familiar names of the substances with which they were dealing! The discovery of gold in New South Wales in 1851 by an illiterate California miner, which added more than a million of gold to the world’s supply, is an instance in point. Recently, instances are said to have occurred, where skilled miners have again and again, in the course of their explorations in our western country, found great treasures. Such “ special knowledge,” derived from long, careful observation, certainly rises far above the ordinary ability of the average of mankind, and marks its possessor as an expert, within the proper limitations of the rules of law on the subject.
The auditor, in a very painstaking way, has gone into a comparison of the pretensions of two of the claimants with' the testimony on the part of the United States and of the claimants themselves, and has pointed out that the two claims conflict with each other, and that each is greatly in excess of what it ought justly to be. He has therefore reduced them to what seems to us to be reasonable limits, and we think his action is correct!
This case differs from the two cases just disposed of,* inasmuch as the lands of the claimants in the present case were actually taken by the Government; and in such cases only the act provides for the payment of “the expenses,” which includes fees of witnesses; and we therefore have a right to assign a portion of the money in court for their payment. The auditor’s report will therefore be affirmed.

 Applications of Wm. IT. Hayden and Samuel P. Lee, reported herein at page 605.