S. GROVER BURNETT, Respondent, v. JOHN G. FREEMAN et ux., Appellants.

Kansas City Court of Appeals, May 20, 1907.

1. **WITNESSES: Expert: Compensation.** A witness, physician or other expert, may be compelled to give his opinion on hypothetical or other questions involving his professional knowledge without compensation other than the witness fee taxed to the ordinary witness. [Cases and history considered.]

2. ———: ———: ———: **Extent of Duty.** An expert owes it to the State rather than to the litigant to give the court the benefit of knowledge he has in store at the time he is called upon; but he cannot be compelled to make investigation in order to qualify himself to testify upon the given subject of litigation.

3. ———: ———: ———: ———: **Contract.** A contract to pay an expert witness for any service which is necessary to qualify him to testify on the given subject in litigation, would be valid; but an agreement to pay for an expert's testimony as to the matters he is required as a citizen to testify to, would be without consideration, against public policy and invalid.

4. ———: ———: ———: **Custom.** The fact that a physician's custom was to charge extra for attendance as a witness in the line of his profession, of which custom the party calling him had knowledge when he subpoenaed him, will not validate his claim for compensation.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED AND REMANDED.

*Hamner, Hamner & Calvin,* for appellants, filed argument.

*L. A. Laughlin,* for respondent, filed argument.

ELLISON, J.—The plaintiff is a practicing physician in Kansas City. Freeman and his wife each sued Metropolitan Street Railway Company for injuries alleged to have been suffered by the wife through the negligence of the servants of that company.. The plaintiff was called as a witness in each of the cases in behalf of the plaintiff. He has brought the present action on a *quantum meruit* in which he claims fifty dollars in each case for his services as an expert witness. He recovered judgment in the trial court.

The court, among other instructions, gave one that if the jury found "that plaintiff's services were of an expert character and required scientific knowledge, and that plaintiff in such cases charged more than the ordinary witness fee, and that defendants knew that, and caused plaintiff to give expert testimony, then defendants became liable to pay plaintiff the reasonable value of the services." On the other hand the court refused instructions offered by defendants to the effect that plaintiff could not recover extra compensation above witness fee for attending the court as a witness in the cases.

Whether a physician could be allowed to charge for his services as a witness as an expert has been a question upon which the courts have entertained widely divergent views. In Rogers on Expert Testimony, 425, it is said that the cases in this country are nearly balanced and that the question must be regarded as still an open

Burnett v. Freeman.

one. Counsel have not cited a case from this State. Among those from other jurisdictions affirming his right to charge and his right to refuse to testify unless paid in addition to a mere witness fee, are Buchman v. State, 59 Ind. 1; Dills v. State, 59 Ind. 15; People v. Montgomery, 13 Abbott's Prac. (N. S.) 207; In the Matter of Roelker, 1 Sprague 276; Webb v. Page, 1 Carr. & Kirw. 23. And among text-writers affirming such right are 1 Taylor's Prin. of Med. Jurisprudence, 19; 2 Phillips, Evidence, 828; I Redfield, Wills, 154, 155, and note; 1 Wharton, Evidence, secs. 380, 456. Among those entertaining the opposite view are Ex parte Dement, 53 Ala. 389; Dixon v. People, 168 Ill. 189; Railway v. Zeiger, 182 Ill. 9; Commissioners v. Lee, 3 Colo. App. 177; Flinn v. County, 60 Ark. 204. These are supported by later editions of Greenleaf's Evidence, Vol. 1, sec. 310, and by 3 Wigmore, Evidence, sec. 2203.

In Webb v. Page, supra, it is said that "There is a distinction between the case of a man who sees a fact and is called to prove it in a court of justice, and that of a man who is selected by a party to give his opinion on a matter with which he is peculiarly conversant from the nature of his employment in life. The former is bound, as a matter of public duty, to speak to a fact which happens to have fallen within his knowledge—without such testimony, the course of justice must be stopped. The latter is under no such obligation. There is no such necessity for his evidence, and the party who selects him must pay him." It is said that while one owes a duty to the State to come forward, on proper formal process at the instance of a litigant, and testify to what he knows of matters in dispute, he ought not to be compelled to assist a private party in a suit about which he has no knowledge of facts in controversy and about which he is asked to contribute professional services. Those holding to the view that the professional man may refuse to so serve the litigant put it largely

upon the ground that to force him would be akin to taking one's property against his will for the benefit of another.

It seems to us that in the discussion of the subject there are some illustrations given which are not apt. Thus in support of the view that the professional expert should be compelled to testify as to matters of expert opinion, it was asked and the question has been often quoted since, that "Were the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing in the same coach, while a chimney-sweeper and a barrow-woman were in dispute about a halfpenny worth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No! Most certainly not." Every one (including the expert) would yield ready assent to that statement. The expert would not say that he should not be called to give testimony to anything he may know of the case as any other witness, exalted or lowly. His claim is that he ought not to be put on any other plane than the ordinary witness and ought not to be made to contribute from his calling in life to the benefit of a stranger.

It must be admitted that there is strong argument to support either view. It is not farfetched to suppose a physician or surgeon of such wide reputation for skill and ability that his services as a witness would be required to such an extent as to seriously cripple the practice of his profession for his own benefit. There are instances where a professional man has devoted his life to the free service of his fellows, but it has never yet been said that he could be compelled to do so. If it were known that the free services (save ordinary witness fee) of the most eminent professional men of the country could be compelled at the instance of any litigant, might he not be required to devote a great part, or all, of his time in attendance upon courts or in giving his deposi-

tion, for the purpose of answering hypothetical questions on suppositional facts? It is sufficient to call for grave consideration when a rule is asked to be enforced which could lead to such results.

On the other hand all must concede that the physician, surgeon or lawyer, is not entitled to any more consideration than an expert in any other calling. A farmer, a mechanic, a merchant, and he who follows most any avocation, may be qualified to testify as an expert in cases which call for the peculiar knowledge which he possesses and which he has spent his time and money in acquiring. If either of these could demand compensation (more than ordinary witness fee) the administration of the law would undergo a radical change. As illustrated in ex parte Dement, supra, at page 394 of the report, there may be litigation concerning the sale, or contract for sale, of any commercial commodity. The contract could be proved by the parties, documents or those acquainted with its terms, and yet it might, perhaps, be necessary to prove the value of such commodity in certain markets on a given day. Dealers in such commodities, entire strangers to the litigants and wholly disinterested in their affairs, could be compelled to testify as to such value, though it involved a special knowledge gained in the prosecution of their special calling. Like instances in great number could be given, all of which should be classed as expert knowledge gained at expense to the possessor and out of which he obtains his living.

After consideration of the question in all its bearings, we have arrived at the conclusion that a witness called to testify as an expert, whether as a physician or in any other branch of knowledge, may be compelled to state his opinion upon hypothetical or other questions involving his professional knowledge, without compensation other than the witness fee taxed to the ordinary witness. It is a duty he owes to the State in aid of its

orderly existence and in return for which he enjoys its protection and the administration of its laws in his behalf; not least of which would be the compulsion of other experts, whether they be the man who practices a profession, the artisan, the artist, the tradesman or other person to come to his aid when needed in litigation in which he might unfortunately be involved. Indeed, in this very case the plaintiff invoked the special knowledge of his professional brethren in aid of the price he charged for his attendance upon the court, and there was no thought of it not being their bounden duty to give to the court and jury, in his behalf, the benefit of their information derived through the experience and study of their profession.

In England there was a statute (5 Elizabeth, chapter 9, section 12) providing a penalty against the witness "who having not a lawful and reasonable let or impediment to the contrary," fails to appear to testify in a cause after process served upon him, "and having tendered unto him or them, according to his or their countenance or calling such reasonable sums of money for his or their costs and charges, as having regard to the distance of the places is necessary to be allowed in that behalf." It is possible that such statute has had its influence in the course of judicial decision and has fostered distinctions that would otherwise not have obtained. Distinctions did exist at the date of that statute, and before and since its enactment, so that a witness in high social, official, or professional life, was thought to require more for his expense in attendance upon the court. These have largely disappeared, though we find that as to the professions of law and medicine they have remained with sufficient tenacity to influence claims for extra compensation from persons practicing those professions to this day. Thus, Severn v. Olive, 3 Brod. & Bing, 72, was an action on an insurance policy covering a sugar house which burned. The

defense was that the owner had used a newly invented process for boiling sugar which was more dangerous than the old. To test or prove this, a number of expensive experiments were made by each party which consisted in the employment of highly heated oil; and many scientific and professional men of eminence were called as witnesses to give their opinions as to the comparative safety or danger of the process. Various sums were allowed these witnesses by the prothonotary. These were afterwards disallowed. The court said that "no allowance ought to be made . . . for the time of scientific witnesses unless they were medical men, such as physicians or surgeons." And in Lopes v. De Tastet, 3 Brod. & Bing. 292, costs were not allowed for the time of a broker witness as it was objected that none such could ever be allowed except for "medical men or solicitors." In Moor v. Adam, 5 Maule & Sel. 156, compensation for loss of time was refused two merchant witnesses coming from abroad. In a note appended to the report of that case it is shown that Lord ELLENBOROUGH remarked that "he believed the practice had been to make allowance to medical men and attorneys, but not to others."

So far as the matter of loss of time is concerned, there is no good reason why a physician or an attorney should be preferred to any other witness, and the law now very properly puts all upon the same level. These considerations, while not affecting the question whether a physician is entitled to compensation on the ground of performing service for the party calling him, yet explain, to some extent, why it is that there has grown up an idea that an expert in medicine, surgery, or law, should be entitled to compensation for stating his knowledge of those professions upon the witness stand, when rarely a claim is made for the innumerable calls for expert evidence from other avocations.

It should be remembered that the duty the expert

125 App—44

owes to the state, as a performance of citizenship, rather than a rendering of service to an individual, pertains to an obligation to give the court the benefit of the knowledge he has in store at the time he is called upon. He cannot be required to especially fit himself for lines of inquiry. He should not be expected to make examinations, perform professional service and the like. For that is not the office of a witness. He could not be compelled to do that any more than an ordinary person with no knowledge of the facts pertaining to a case, should be required to go and post himself so as to become a witness. And so the court said in Ex parte Dement, supra (397), that "Nothing we have said is intended to support the proposition, that a physician or surgeon could be punished as for a contempt for refusing, unless paid therefor, to make a post-mortem examination, or undertake any other operation, requiring skill and special professional training, in order to qualify himself, when desired by a court so to do, to testify in a cause." In Flinn v. Prairie County, supra, it was held that the expert could not be required to attend upon a trial and listen to testimony so as to qualify himself. "An expert cannot be compelled to examine a case in order to give a professional opinion, nor to make a post-mortem examination or analyze the contents of a stomach, nor to attend at a trial to hear and consider the testimony given, so as to qualify himself to give a deliberate opinion on a question of science arising upon such testimony." [Lawson on Expert and Opinion Evidence, 317.] "If the witness be required to do any particular thing, as to analyze the contents of a stomach, or perform a post-mortem operation—in these and similar cases, such services cannot be compelled by the ordinary process of subpoena, or the labor required by the payment of an ordinary witness fee." [Commissioners v. Lee, 3 Colo. App. 177.]

Burnett v. Freeman.

But plaintiff also puts his right to a judgment upon another ground, distinct from the first, and that is that defendant agreed to pay him a compensation for his services as an expert witness. In our opinion a contract would be valid to pay an expert witness for any service which the law does not compel him to do as a witness free of charge as already pointed out. For all such service he is entitled to claim compensation. But an agreement to pay such expert (whether doctor or lawyer) for being a witness as to those matters which we have held the law and his duty as a citizen require him to testify to, would be invalid. As already stated, he is in such respect on the same plane with any other witness, and the agreement would be without consideration, and it would be against public policy. [Dodge v. Stiles, 26 Conn. 463; Pool v. Boston, 5 Cush. 219.] We are cited to Barrus v. Phaneuf, 166 Mass. 123. We do not need to approve or take issue with that case. It is not put on any very definite ground. But it seems the witness not only agreed to become a witness without a subpoena, but that he attended the trial and assisted with his expert knowledge, thus doing more for the party calling him than the law would have compelled him to do.

It is urged as one of the reasons why plaintiff was entitled to recover, that he always charged extra for attendance as a witness in the line of his profession and that defendant knew that and with such knowledge had him subpoenaed. We think that such consideration should not afford any help to plaintiff's case. The fact that he may have exacted compensation for attending court as a witness in other instances, which the law did not justify, should not legalize his claim.

On a retrial of the case it ought to be easily seen whether plaintiff has a cause of action within the limits of the law as we have herein stated it. The judgment is reversed and the cause remanded. All concur.