HOCKING, Respondent, vs. WINDSOR SPRING COMPANY, Appellant.

*April 9—April 30, 1907.*

*Master and servant: Injuries from defective machinery: Court and jury: Expert testimony: Striking out testimony: Sufficiency of ruling: Physicians and surgeons: Competency to testify: Special verdict: Damages: Instructions to jury: Excessive damages.*

1. In an action for personal injuries caused by a splinter broken from a die in a punch press which plaintiff was operating for defendant, the question whether the die produced in court by plaintiff was the one from which the splinter came is *held*, upon the evidence, to have been for the jury.

2. Testimony of witnesses in such case that they had examined and compared, with the aid of a magnifying glass, the splinter and the crevice in the die produced by plaintiff, and had tested the material of both as to hardness and similarity of surface and grain, and that from such examination they could state that the splinter came from that die, was competent and proper.

3. Expert testimony to the effect that the die was improperly set, based on the facts that it sheared and that the knife of the die became loosened as it was operated, and on the marks appearing on the dies, was also proper.

4. Plaintiff's counsel, in presence of the jury, asked that certain opinion evidence introduced by him be stricken out and the jury requested not to consider it. The court stated: "The motion is granted and the jury is so instructed;" but gave no further instruction on the subject. *Held*, that this ruling, in connection with the language of counsel's request, sufficiently informed the jury that the evidence in question was not to be considered.

5. Sec. 1436, Stats. (Supp. 1906; Laws of 1903, ch. 426), does not preclude a physician who holds neither the license nor the certificate of registration there referred to from testifying to facts not within the field of an expert but within the observation of any person. So *held* as to testimony of a physician that he found plaintiff's eye had been injured by some object; that he washed the eye, sent plaintiff to the hospital, and there removed a metal splinter from the eye with a magnet; and that he afterwards removed the eye.

6. Where by a special verdict it is found that defendant's negligence was the proximate cause of injuries to plaintiff, it was not error

to refuse to submit in such verdict questions as to whether the injuries were not the result of mere or unavoidable accident.

7. An instruction that plaintiff was entitled to recover "such sum as will fully compensate him for the loss of his eye and the disadvantage, disfigurement, and inconvenience it is reasonably certain from the evidence will result from such loss," is *held* not to have misled the jury to understand that they might duplicate the damages by allowing full compensation for the loss of the eye and further compensation for the resulting disadvantage, disfigurement, and inconvenience.

8. An award of $5,000 for the loss of an eye, involving much pain and suffering, is *held* not excessive.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This is an action to recover damages for the loss of an eye which it is alleged is attributable to the negligence of the defendant. The case was before this court on a former appeal from the judgment of the lower court, and is reported in 125 Wis. 575, 104 N. W. 705. The defendant is a corporation engaged in manufacturing at Kenosha, Wisconsin. On September 14, 1901, the plaintiff was engaged as an employee of the defendant in operating a machine used for cutting bedspring slats. His regular employment was that of enameler, and he had only been engaged at this work for the defendant a short time preceding the accident. Prior to this he had been employed by the defendant, but at an entirely different kind of work. For perhaps three months prior to the accident he had again been employed by the defendant, but he had been working at other work than that at which he was injured, with the exception of a few hours at a time and for the week previous to the accident, when he had been employed continuously at the machine which he claimed operated defectively and thereby caused him the injuries now complained of. This machine is called a punch press. The stock or material to be shaped is placed on a plate or die which has a hole in it. A punch or knife, which fits closely into the hole in the die, descends upon the stock, passes through it into the

hole in the die, and thus cuts and shapes the stock.    The punch or knife is fastened in place by screws to the part which descends whenever the foot is placed on a lever, causing the machine to operate.    The machine is alleged to have operated defectively, in that the punch or knife was insecurely fastened and did not descend exactly into the hole in the plate or die, but the edge of the knife struck on the edge of the hole. This action, it is claimed, broke off a splinter of the die and threw it into plaintiff's eye, causing the injury which necessitated the removal of the eye and impaired the use of the other.

Plaintiff testified that previous to the injury there had been a chucking or scraping noise and that he had directed the foreman's attention to it; that the foreman had tightened up some screws, tried the machine, and then directed him to go ahead with his work.    He also testified that within an hour of the accident he called the foreman's attention to the fact that the screws holding the knife were worn and loose, and that the foreman promised to send for some new ones as soon as possible.    The splinter taken from plaintiff's eye was claimed to be part of a die which, two weeks after the accident, was taken by the plaintiff from a shelf back of the machine at which plaintiff was working when injured.    The defendant claimed to have taken the die which was in use on the machine at the time of the injury from the machine a few days after the accident and to have retained it thereafter. There was evidence that the splinter and the die produced by plaintiff were alike in quality, were tool steel, that a splinter had broken off of this die which in form, size, hardness, and magnetic quality was like the splinter produced by plaintiff, and that the grain of the break on the splinter and the die from which the plaintiff claimed it had come were alike. There was proof tending to show that the die produced by plaintiff had been used for about twenty times after the splinter had been broken off.

At the suggestion of the court the following question in substance was asked of various witnesses:

"Assuming it to be proven and true that an inexperienced man, or one having about three weeks' experience in operating a punch press, using the dies shown you for the cutting of metal, and he had never been instructed as to setting dies, is placed to operate and use such punch press in such work, how often should such machine be inspected by the experienced die-setter having charge of the machine?"

This was answered and the evidence received over defendant's objection. Near the end of the trial plaintiff's counsel in the following form requested the court to strike this evidence from the case:

"During the examination of our witnesses several of them were asked for their opinion as to how frequently machines of this kind should be inspected, and I think objection was made to several questions, and I desire that they be stricken out, and all expressions of opinion on the part of any of our witnesses as to how often machines of this character doing this work should be inspected be stricken out, and the jury requested not to consider their statements as to their opinions as to how frequently they should be so inspected, with the understanding, however, that the testimony I also introduced, as to the custom of inspecting machines, be left in and be permitted to be considered by the jury."

To this request defendant's counsel objected, and the court thereupon made a ruling as follows: "The motion is granted and the jury is so instructed." Testimony was given by a physician and surgeon of Chicago of the facts about the injury to the eye and the removal of the eye.

The case was submitted to a jury and a special verdict was rendered finding the defendant guilty of negligence, that such negligence was the proximate cause of the injury, and that plaintiff was free from contributory negligence. Plaintiff's damages were assessed at $5,000. From a judgment on a special verdict in favor of the plaintiff the defendant appeals.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

For the respondent there was a brief signed by *Norman L. Baker* and *B. J. Wellman & R. V. Baker,* and oral argument by *Norman L. Baker.*

SIEBECKER, J. Upon the former appeal to this court it was held that the evidence before the court required submission of the case to the jury upon the issues of defendant's negligence and plaintiff's assumption of the risk of the dangers incident to the operation of the alleged defective machine. 125 Wis. 575, 104 N. W. 705. It is now contended that the evidence on these questions on this appeal materially differs from that of the former, in that it now conclusively appears that by the chucking noises of the machine when operating it plaintiff was apprised of the danger complained of and led to complain to the foreman that the machine was not in a safe working condition. An attentive reading of the evidence discloses no substantial difference as to the state of the proof on these questions on the two trials.

It is also claimed that the evidence is undisputed that the part of the die produced by the plaintiff is not the one from which the splinter that injured him could have chipped, because it was not in use at the time of the accident, and for this reason it is claimed that the case is devoid of any showing that the injury is attributable to the negligence of defendant for failing to furnish him with a safe machine with which to work. There is evidence tending to show that two weeks after the accident this die was taken from a place near the machine where dies used in this machine were kept, that the splinter removed from plaintiff's eye corresponded in form, shape, and grain to the crevice on the die, and that the material of the die and of the splinter was alike in hardness and texture. The evidence that this die was not used is not so conclusive in its nature as to absolutely rebut the permissible

inference that the splinter came from the die produced by plaintiff and that it was in fact in use when he was injured. This called for submission of this question to the jury, as the court ruled.

Appellant alleges an exception to the reception of the evidence of witnesses testifying that they had made an examination and comparison of the splinter and the crevice in the die with the aid of a magnifying glass, and had tested the material of the die and splinter as to hardness and similarity of surface and grain, and that from such examination and inspection they could state that the splinter came from the crevice in the die. This testimony was competent and proper. It tended to establish the identity of the die from which the splinter came and that the die was in use when the accident happened. Their observations were not within the range of common knowledge, but within a field wherein special knowledge and experience in these respects enabled them to form conclusions as to such facts, and this made such information proper evidence thereof.

Another exception is urged to the evidence of witnesses who testified that the die was improperly set. They based their conclusion on the fact that it sheared, and that the knife of the die became loosened as it was operated, and on the marks appearing on the dies. This evidence related to the defect complained of and involved in the operation of the machine under the circumstances shown, and presented a situation wherein the jury could not form as reliable an opinion as an expert on the subject. Hence it was properly received and submitted in the case.

A number of witnesses were permitted to answer, over defendant's objection, the inquiry as to how often the machine wherein the die and punch knife were being used and operated by an inexperienced workman should be inspected by an experienced die-setter having charge of it. They answered in effect that such inspection should be made as often as once

each half hour or once an hour. This question was pro-
pounded by plaintiff's counsel at the court's suggestion in rul-
ing on an objection to testimony.

At the conclusion of the testimony plaintiff's counsel re-
quested that the answers of witnesses giving their opinion of
the frequency with which such inspection should be made
be stricken out, "and the jury requested not to consider their
statements as to their opinions as to how frequently they
should be so inspected, with the understánding, however,
that the testimony I also introduced, as to the custom of in-
specting machines, be left in and be permitted to be con-
sidered by the jury." The court ruled on this request, stat-
ing: "The motion is granted and the jury is so instructed."
No further direction or instruction was given on the subject.
It is urged that the court's action in this particular did not
sufficiently inform the jury of the effect of the ruling, and
thus prejudiced defendant by permitting them to take this tes-
timony into consideration in determining the question of the
negligence charged. True, the ruling as framed by the court
is very tersely stated and might well have been amplified for
an aid to the jury; but it must be taken in connection with the
language of counsel's request, which was made in their pres-
ence and specified what testimony he asked to have stricken
out and that the jury be instructed not to consider it in the
case. His request explicitly demanded that the testimony be
withdrawn from the case and the jury be requested not to
consider the statements given by these witnesses as to how
frequently the machine and dies operated by an inexperienced
workman should be inspected. This plainly conveyed the in-
formation that such evidence was removed from the jury's
consideration, and the jury must have so understood it. The
ruling is not so involved or so indefinite that it can reasonably
be said that the jury were not informed of the action of the
court.

The incompetency of Dr. Hawley as a witness in the case

is alleged under ch. 426, Laws of 1903, which provides that no person shall have the right to collect any fees for medical or surgical services or "to testify in a professional capacity as a physician, or surgeon, or insanity expert . . . unless he or she holds a license" or a certificate and diploma, or a membership in a medical society, duly recorded as prescribed, and that nothing in the act shall restrict courts from receiving the testimony of any person in a criminal action. It is undisputed that Dr. Hawley was not a resident of this state and had not complied with the provisions of this statute. The doctor testified that he found that plaintiff's eye had been injured by a cut from some object which passed into it and penetrated the lens; that he washed the eye, sent plaintiff to a hospital, and there removed the splinter from the eye with a magnet; and that he afterwards removed the eye. These facts are not disputed in the case. It is averred that this statute disqualified him to testify to any of the facts above stated, because he is within the class of persons practicing medicine or surgery who are debarred from testifying "in a professional capacity as a physician, or surgeon, or insanity expert in any case," except criminal actions. We are of opinion that this contention gives to this statute a wider scope than its context warrants. Applying the language of the statute to the subject covered by the legislation, it is clear that persons practicing medicine and surgery are thereby deprived of the right to collect any compensation for such services, and "to testify in a professional capacity as a physician, or surgeon, or insanity expert," unless they comply with the law. The phraseology of the law is quite clear and direct in expressing a legislative intent that such persons should be disqualified to testify as experts in their professional capacity. Such a disqualification, however, would not affect their competency to testify to facts not within the field of an expert. As to such matters their qualifications would be governed by the rules applicable to any other person. It is averred that the evidence of Dr. Haw-

ley was in its nature expert evidence of a physician and surgeon. The evidence, however, discloses that, aside from the statement that the splinter penetrated the lens, 'the doctor testified to nothing but what was within the observation of any person, and this statement had no bearing on the controverted issues litigated. It could not have operated to defendant's prejudice, since it was practically admitted that the eye was so seriously injured as to necessitate its removal. Under these circumstances we find nothing in the testimony of Dr. Hawley which should have been excluded from the case.

It is averred that the court erred in not submitting in the special verdict, as requested, the question of whether plaintiff's injuries were not the result of a mere or unavoidable accident. The question of defendant's negligence was covered by the special verdict and the findings of the jury, which included a finding that such negligence was the proximate cause of the injury. Under these circumstances the subject of the questions was covered and determined by the verdict rendered. As stated in *Byington v. Merrill*, 112 Wis. 211, 88 N. W. 26, "the answers to those questions necessarily covered the subject of whether the injury to respondent was the result of a mere accident, and the question requested upon that subject was very properly refused."

Several exceptions are preserved to the refusal to give some of the defendant's requested instructions and to those given by the court on the subjects covered by them, defendant averring and claiming that prejudicial errors were committed in these respects. After an examination of them we are led to the conclusion that no such errors exist, and that but one of them requires specific attention at this time.

In connection with an enumeration of the elements of past and future damages shown by the evidence the court gave the following instruction:

"Plaintiff . . . is entitled to recover for such loss of time as you are satisfied from the evidence he has reasonably sus-

tained as a result of the injury; further, such sum as will fully compensate him for the loss of his eye and the disadvantage, disfigurement, and inconvenience it is reasonably certain from the evidence will result from such loss."

It is contended that the quoted part of the instruction is misleading, in that it instructed the jury that they might duplicate the damages by allowing full compensation for the loss of an eye, and for the elements of disadvantage, disfigurement, and inconvenience resulting from it. While the instruction, in its grammatical form, may be susceptible of such construction, yet it does not necessarily follow that the jurors so understood and treated it. In their application of it to the situation at hand they must have understood that the damages resulting from disadvantage, disfigurement, and inconvenience were comprehended and included in the loss of the eye and therefore not additional to the damages occasioned by the loss of it. This interpretation is reasonable, and treats the instruction in the sense evidently intended by the court and understood by the jury.

We cannot accede to the claim that the amount of damages awarded is excessive. In addition to the injuries resulting from the loss of his eye, which need not be repeated here, it appears that plaintiff endured much pain and suffering on account of its treatment and removal and from the conditions consequent to such loss. We find no ground for declaring the amount to be in excess of an actual compensation for the injuries sustained.

No other question suggested is deemed to require special attention. We find no reversible error in the record.

*By the Court.*—Judgment affirmed.