PHILLER, Appellant, vs. WAUKESHA COUNTY, Respondent.

*April 2—April 20, 1909.*

*Witnesses: Compensation: Experts: Counties: Criminal cases: Liability of county for witness fees: Defendant's experts.*

1. The statute requiring all persons to obey the subpœna of a court, and fixing their compensation at $1.50 per day, applies to an expert witness, and hence from the mere subpœna and compulsion to testify results no implied contract to pay an

expert witness anything in excess of the statutory fees, rec-
ognizing, however, that if he does perform work in prepara-
tion and qualification at the request of a party, an implied
contract for reasonable compensation may arise, and an express
contract therefor will be valid.

2. Liability cannot be imposed upon a county or other governmental
subdivision of the state except in accordance with statute law,
and hence, in the absence of a statute authorizing counsel for
a defendant, charged with homicide, to contract with a physi-
cian as a witness for the accused to make preparation to testify
as an expert at the county's expense, no liability against the
county is created.

3. In criminal prosecutions an order of the court for compulsory
attendance of the accused's witnesses is a necessary prerequi-
site to the existence of any liability of the county for witness
fees therefor, and in an action against the county for the stat-
utory witness fees for attendance upon the trial of a criminal
action a complaint which fails to allege such order fails to
state a cause of action.

APPEAL from an order of the circuit court for Waukesha
county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

Appeal by plaintiff from order sustaining demurrer to the
complaint, wherein it was alleged that plaintiff was a com-
petent physician; that in January, 1907, one McMahon was
charged with the crime of murder and interposed a plea of
insanity; that plaintiff, at the request of McMahon's attor-
neys and upon their assurance that the county would be
liable for his services, made careful medical examination of
said McMahon with reference to sanity, and in January
attended upon the trial and gave testimony as an expert wit-
ness five days in response to subpœna, and upon the second
trial of said issue in July he similarly attended seven days
and gave testimony as an expert, apparently on behalf of the
defendant. He presented separate bills for the two trials at
$50 per day to the county board, which were disallowed by a
single order or vote, and he duly appealed to the circuit court.
A demurrer on various grounds was interposed, but sustained
on the ground that the complaint failed to state a ca se of
action against the county.

The cause was submitted for the appellant on the brief of *Ryan, Merton & Newbury,* and for the respondent on that of *Milo Muckleston,* district attorney, and *V. H. Tichenor,* of counsel.

DODGE, J.   1. The complaint evinces a main purpose to state a cause of action against the county for the value of a physician's time and services in making examinations of the symptoms and mental condition of a defendant in a criminal trial and in attending court to testify with respect to his sanity "as an expert witness," in the words of the complaint. Except for said quoted clause there is no suggestion as to the character of the testimony he gave, whether it related to facts which he discovered by observation, albeit a trained and expert observation, or to an opinion; probably both.

The effect of our statutes is to require all persons to obey the subpœna of a court, and their compensation for such obedience is fixed at $1.50 per day, with mileage.   Secs. 4063, 4064, 4067, Stats. (1898).   In a civil action between private parties those fees must be paid in advance, if demanded. Sec. 4057, Stats. (1898).   In a criminal case they need not be tendered or paid in advance (sec. 4058, Stats. 1898), though doubtless a contract may in some cases be implied to pay the specified fees for the service.   The duty of every witness is to attend as long as commanded and to testify to all material facts within his knowledge.   This is a duty resting upon all members of the community as such to aid the courts in the administration of justice, and insistence upon it by the courts does not constitute such a taking of property as is forbidden by the constitution.   *West v. State,* 1 Wis. 209.   This is not seriously controverted by the appellant's counsel in its application to what they call ordinary witnesses testifying to ordinary facts, but they contend that when a physician is called upon to give expert testimony his services are of a different character and cannot be demanded

without compensation. The word "expert" in this connection is somewhat loose and uncertain. Much of the testimony of a so-called expert is in no wise different in character from that of any other witness. He may be called on to testify to that which he sees, hears, or otherwise discovers by the use of his senses; but those facts may be such that no one but a trained expert would discover them by such use of his senses. A skilled physician discovers facts by the use of sight, hearing, or feeling which another man might not. But this distinction is one of degree merely and not of kind. All men differ in their ability to observe accurately and in the certainty of knowledge which they derive from such observation. An illustration of such testimony, not in the legal sense expert, and yet dependent on the peculiar knowledge and abilities of the witness, is presented in *Hocking v. Windsor Spring Co.* 131 Wis. 532, 539, 111 N. W. 685, where an oculist, not competent under our law to testify as an expert, was allowed to testify to physical injuries which doubtless could not have been seen and discovered or described by a nonprofessional. There can be no doubt in this field that every man owes a duty to attend and testify to the material facts that he knows notwithstanding the knowledge thereof may be due either to his learning or his expert faculties. Any attempt to draw a line between the exceptionally stupid and nonobservant person and others who, by greater alertness, training, or skill in observation, may acquire more knowledge, is impracticable and irrational. The educated and intelligent owe the same duty of aid to the courts up to the limit of their ability as does the less competent man—the man whose services are worth $50 per day as well as he whose time is worth but $2. The more difficult field is entered when we approach the question of calling upon men of exceptional experience and qualifications to give their ópinion as the result either of facts which they observe or from an hypothetical statement of facts. This is the real field of expert evidence. It is

there that the expert can testify and the nonexpert cannot. But here also the expression "expert" is of very broad meaning. It includes the mechanic, whose opinion may be asked upon the strength or value of a brick wall or chimney, or the farmer, with reference to quality and value of lands, crops, or farm animals, as well as the man of most abstruse research and learning in the fields of chemistry and bacteriology or medicine. So here, again, no line can be drawn on principle between the men or the testimony in favor of a physician over a bricklayer. It would seem on principle, in analogy to the previous discussion, that if from the witness's observation or from the hypothetical facts stated to him he has consciously in mind either knowledge or an opinion, such knowledge or existent opinion is a fact as to which he may be required to testify; but, as is often the case, and in the higher branches of expert learning perhaps usually, an amount of study, experimentation, thought, and reflection may be necessary to the formation of an opinion, and the witness may often honestly answer that he has not formed such opinion. The chemist, after submitting a substance to various analyses and reactions, may yet need to study the books or make further experimentation before he can assert the presence or absence of certain elements. The physician, after exhaustive inspection and tests, is still often left in doubt, and does not venture an opinion to his patient until after long study. Such study, reflection, etc., is not the function of the ordinary witness. It is not within the command of the subpœna, and there is no reason to think that the statutes were intended to require it of any witness merely as such. If a party desires that any witness, expert or otherwise, equip himself with knowledge by research or inspection, it may employ him to do so, but such employment will be controlled by the ordinary rules of contract, express or implied.

In some of the earlier text-books and decisions it was asserted that courts could not or would not compel certain

professional men to attend and testify on professional subjects for the mere ordinary witness fee, more especially on the ground that the time of such witnesses was so valuable that they ought not to be thus coerced. *In re Roelker,* 1 Spr. Dec. 276, Fed. Cas. No. 11,995; Ordronaux, Med. Jur. (ed. 1869) 138; 1 Greenl. Ev. (13th ed.) § 310; 1 Taylor, Med. Jur. 19; *People v. Montgomery,* 13 Abb. Pr. N. s. 207; *Buchman v. State,* 59 Ind. 1. Most of these seem to result from a custom amongst the English courts to treat physicians and lawyers as exempt from coerced attendance on the same terms as other witnesses, a custom often criticised, but which had some justification in an early statute (5 Eliz. ch. 9) which provided for the tender to a witness "according to countenance or calling his reasonable charges." *Webb v. Page,* 1 Carr. & K. 23; *Lonergan v. Royal Exch. Assurance,* 7 Bing. 725; *Collins v. Godefroy,* 1 B. & Ad. 950; *Parkinson v. Atkinson,* 31 L. J. N. s. C. P. 199. The fallacy of the reason on which these earlier customs were supported has, however, been recognized and their authority repudiated in a great multitude of more recent decisions. *Ex parte Dement,* 53 Ala. 389; *Summers v. State,* 5 Tex. App. 365, 374; *State v. Teipner,* 36 Minn. 535, 32 N. W. 678; *Larimer Co. v. Lee,* 3 Colo. App. 177, 32 Pac. 841; *Flinn v. Prairie Co.* 60 Ark. 204, 29 S. W. 459; *Dixon v. People,* 168 Ill. 179, 48 N. E. 108; *Burnett v. Freeman,* 125 Mo. App. 683, 103 S. W. 121; *State v. Bell,* 212 Mo. 111, 127, 111 S. W. 24; *Main v. Sherman Co.* 74 Neb. 155, 103 N. W. 1038; *Barrus v. Phaneuf,* 166 Mass. 123, 44 N. E. 141; 3 Wigmore, Ev. 2203. The result of these cases is that the expert, be he mechanic, physician, engineer, or chemist, must obey the subpœna of the court and must testify to such facts as are within his knowledge, whether these facts may have required professional learning, study, or skill to ascertain them or not. If, when placed on the witness stand, he has such knowledge, he must testify to it. They substantially all recognize, how-

ever, that the subpœna under statutes like ours does not compel the expert nor other witness to equip himself by labor with ability to testify either to an opinion or to any other fact which might be ascertained by special services, and hence that from the mere subpœna and compulsion to testify as a witness results no implied contract upon any one to pay the expert anything in excess of the statutory fees, recognizing, however, that, if he does perform work in preparation and qualification to enable him to testify at the request of any person, implied contract for reasonable compensation may arise, or an express contract will be valid. *Barrus v. Phaneuf, supra; Tiffany v. Kellogg Iron Works,* 59 Misc. 113, 109 N. Y. Supp. 754; *Anderson v. M., St. P. & S. S. M. R. Co.* 103 Minn. 184, 114 N. W. 744; *Schofield v. Little,* 2 Ga. App. 286, 58 S. E. 666.

Applying these principles to the present case, it is very obvious that no statute has authorized any one to make any contract for such services at the expense of the county. The allegation of the complaint is that all services of that character were performed at the request of the attorneys for the accused, albeit with their assurance that the county would be liable therefor. Liability cannot be imposed upon counties or other governmental subdivisions of the state except in accordance with statute law, and no statute is referred to conferring any such authority upon counsel for one accused of crime. We are therefore unable to discover any basis upon which the county of *Waukesha* can be held liable for any compensation to this witness other than the statutory fees, if indeed it can be made liable for those.

2. We are in much doubt whether the complaint attempts to state any claim for statutory witness fees, or indeed whether they may not have been paid in this case in the manner customary in criminal cases and especially homicide cases. A very liberal construction of the complaint might disclose facts stated or reasonably implied to indicate the

earning of such fees, in that plaintiff under subpœna attended court five days and gave testimony for the defendant. The right to fees from the public must be found in the statute. The only provisions in statute law bearing upon this subject are the constitution (art. I, sec. 7), that the accused shall "have compulsory process to compel the attendance of witnesses in his behalf," and sec. 4641, Stats. (1898), which provides that in cases of higher homicide accused shall "have process to summon such witnesses as are necessary to his defense at the expense of the state," and sec. 4062, Stats. (1898), that upon satisfactory proof of a defendant's inability to procure the attendance of witnesses for his defense the court may direct necessary witnesses to be summoned, and that witnesses so ordered shall be paid their fees out of the county treasury. All witnesses in a criminal case, whether for prosecution or defense, must attend without payment of their fees in advance. Sec. 4058, Stats. (1898). Whether the constitutional provision or sec. 4641 can be construed to guarantee anything more than the mere process sufficient to compel the attendance of the witnesses for defendant, namely, to impliedly provide that they shall be paid their fees at public expense, is a question upon which this court has not spoken. Similar words have received the more limited construction in *State v. Hornsby*, 8 Rob. (La.) 554, 41 Am. Dec. 305. If the more liberal construction be accorded these provisions or either of them, it carries with it by necessary implication the necessity of supervision of that right to prevent its abuse. Sec. 4641 only entitles a defendant to process to summon "such witnesses as are necessary," and the uniform practice in the circuit courts has, we think, been confirmatory of the implication that, before process can issue for any witness, the court or judge must be satisfied, presumably by affidavit, that he is necessary and shall order process to compel his attendance. Nowhere in the statute is there any provision for the pay-

ment of a defendant's witnesses, except in sec. 4062, Stats. (1898), which permits witnesses "ordered" for the defendant. by the court or judge to be paid their fees out of the county treasury in the same manner that witnesses for the state therein are paid; that is, only upon a certificate of the clerk of court (sec. 4060) after a prior order by court or judge.. This is a necessary prerequisite to the existence of any liability of the county therefor. *Oneida Co. v. Tibbits,* 125. Wis. 9, 102 N. W. 897. The complaint fails to allege either any order of court or judge for the appearance and attendance of plaintiff, and the form of procedure, in presenting his claim to the county board, at least impliedly negatives the issue of any certificate by the clerk of court. Without such prerequisites no cause of action, even for the amount of the statutory fee, can be stated. We therefore conclude that the complaint fails to state any cause of action against the county.

*By the Court.*—Order appealed from is affirmed.