STATE EX REL. REYNOLDS, Attorney General, and others, Petitioners, v. CIRCUIT COURT for WAUKESHA COUNTY and others, Respondents.*

*December 1—December 29, 1961.*

* Motion for rehearing denied, without costs, on March 6, 1962.

314

For the petitioners the cause was argued by *Herman E. Friedrich* of Milwaukee, and *Richard E. Barrett* and *Jay Schwartz*, assistant attorneys general, with whom on the brief were *John W. Reynolds*, attorney general, and *Michael, Best & Friedrich* of Milwaukee.

For the respondents there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Donald J. Tikalsky*.

FAIRCHILD, J.  1. *Is this an appropriate case for exercise of superintending control?* A writ of prohibition may be invoked in cases of nonjurisdictional error where appeal from the error may come too late for effective redress, or be inadequate, and there is need for such intervention to avoid

grave hardship or a complete denial of the rights of a litigant.[1] If relators Gutschenritter and Koepp comply with the order of the circuit court, any right they have to withhold testimony, and any right the state has to have such testimony withheld, will have been destroyed. An appeal could not repair the damage. If they refuse to comply they risk punishment for contempt of court.[2] It is difficult under the circumstances presented to separate the question of whether prohibition would be appropriate from the question whether the circuit court erred, and we consider the matter on its merits for that reason.

*2. Discovery devices under ch. 32, Stats.* Relators contend that since ch. 32, Stats., provides methods by which specified types of information are to be furnished by condemnor to condemnee and vice versa, general statutory provisions for discovery were not intended to apply. Sec. 32.11 (2), Stats. 1957 (first created by ch. 597, Laws of 1957, and in effect at the time of the award in this case), empowered the court to require both parties to submit to the court a statement of contentions on enumerated points, *i.e.,* highest and best use of the property, applicable zoning, designation of claimed comparable lands, sale of which will be used in appraisal opinion, severance damage, if any, maps and pictures to be used, costs of reproduction less depreciation and rate of depreciation, statement of capitalization of income with supporting data, separate opinion as to fair market value, including before and after value where applicable, by not to exceed three appraisers, and qualifications and experience of witnesses offered as experts. Sub. (3) authorized the court to make regulations for a pretrial conference and, if both parties furnished statements of contentions, for exchange of the statements. Sec. 32.10 (1),

---

[1] *Drugsvold v. Small Claims Court* (1961), 13 Wis. (2d) 228, 232, 108 N. W. (2d) 648.
[2] See *Petition of Phelan* (1937), 225 Wis. 314, 322, 274 N. W. 411.

as amended, at the same time, provides that the commissioners shall have the same powers as given to the circuit court by sec. 32.11 (2). A memorandum in the files of the legislative reference library prepared by the corporation counsel of Milwaukee county, the sponsor of the bill, contains the comment that this provision "is a new idea in Wisconsin although it is possible that circuit courts now have such power by implication under pretrial power." Similar provisions appear in sec. 32.09 (7) and (8), Stats. 1959. Sec. 32.05 (3) (d) and (e), Stats. 1959, also requires that when the condemnor gives notice of its jurisdictional offer, it must state that one of the appraisals on which the offer is based is available for inspection at a specified place.

When these provisions of ch. 32, Stats., were enacted, sec. 326.12, Stats., authorized the adverse examination of a party, or person standing in specified relationships to a party, and sec. 269.57 authorized the court or judge to order inspection of property or books and documents containing evidence. It would appear that the discovery provisions in ch. 32 were intended to liberalize rights of discovery in action under ch. 32 beyond, in some respects, what they would be under the general statute. It is by no means clear that the legislature considered that the general statutes had been inapplicable to actions under ch. 32, nor that it intended that they cease to be applicable.

By ch. 113, Laws of 1961, effective June 10, 1961, the legislature repealed and re-created sec. 326.12, Stats., authorizing a discovery examination in civil actions or proceedings of *any person,* thus vastly enlarging the rights of litigants to discovery at any time before the final determination of the action or proceeding. The general policy was thus adopted after the adoption of the discovery procedures under ch. 32, Stats. We find no such inconsistency or conflict of policy or legislative intent as to lead us to the

conclusion that sec. 326.12 is inapplicable to appeals under ch. 32. Sec. 32.05 (10), Stats. 1959, provides that after an appeal to circuit court from an award, the appeal "shall thereupon proceed as an action in said court subject to all the provisions of law relating to actions brought therein . . ."

3. *Records and documents.* Relators contend that the circuit court required Gutschenritter to produce documents not in his possession or subject to his control. The parties had stipulated that if American Appraisal Company had been subpoenaed it would have refused to produce the documents. The return to the writ alleged that the court's order was to the effect that if a subpoena were served upon the American Appraisal Company to produce the documents, they would have to be produced. Gutschenritter therefore does not appear to have been required to produce documents not in his possession.

4. *Claim of privilege.* Relators contend that the information sought by plaintiffs from the experts is privileged. They say that the appraisals of Gutschenritter and Koepp were obtained by the highway commission in contemplation of litigation and were made part of the file of the attorney general for the purpose of preparing for condemnation proceedings. They state that under decided cases in this state and elsewhere, "reports prepared by an agent for his principal to be used for purposes of litigation, are clearly reports which fall within the privilege of attorney and client."

Relators' argument as applied to the present situation does not distinguish between compelling a witness to disclose his knowledge or information of relevant facts and compelling him to disclose the fact of past communication of his knowledge or information or other matters to his attorney or the attorney of his principal. This distinction appears in simplest form in the proposition that a defendant in a civil action may be compelled to testify to his own actions relevant to the

cause of action, but neither he nor his attorney may be compelled to testify how the defendant described the same events to his attorney.

Presumably Gutschenritter and Koepp examined the property involved, the general area in which it is located, and informed themselves as to sales and other factors which should, in their opinion, be considered in determining value before and after the taking. When they felt they had sufficient information they worked out opinions as to such values in the light of the experience and special knowledge which makes them experts, determining to their own satisfaction the weight which ought to be ascribed to various factors. They doubtless prepared and delivered to the commission or the attorney general reports stating or summarizing the information considered, their opinions of the values, and an explanation of the method used or theory followed. The principle for which relators contend might prevent compelling the experts, the attorney general, or the commission to produce these reports but not prevent compelling the expert to state the facts he observed, the information he obtained, his opinion as to values, and the explanation of the method he used.

Sec. 325.22, Stats., provides in part:

"An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment."

Although the statute literally prevents only disclosure by the attorney, it has been construed to prevent compelling an officer of a corporation to testify as to any conversations or reports of the corporation's officers or agents with or to the corporation's attorneys, or conversations or reports by its attorneys with or to its officers or agents.[3] It was decided, however, that the vice-president of plaintiff corporation could

---

[3] *Horlick's Malted Milk Co. v. A. Spiegel Co.* (1913), 155 Wis. 201, 212, 144 N. W. 272.

be compelled to testify as to reports to the corporation from its employees giving the information on which it had based its complaint.

This court, noting the narrow statutory statement of the privilege, decided that an attorney who obtained information by investigation is not precluded by the statute from testifying as to transactions had with or communications made to him by third persons even though those matters came to his knowledge in consequence of his retainer as an attorney.[4]

More recently we have held that in a case involving alleged negligence in operating a motor vehicle the defendant driver's attorney could not be compelled to produce defendant's written report of the accident to his insurance company.[5] We quoted from 58 Am. Jur., Witnesses, p. 282, sec. 503, as follows:

"A statement concerning an accident obtained by an employer from his servant for the *bona fide* purpose of being later transmitted to the employer's attorney for advice, or to be used by the attorney in connection with pending or threatened litigation, is privileged, because it is part of the communication from the client to his counsel. The same is true of a statement by the accredited agent of a corporation, giving his account of an accident for the use of counsel in pending or threatened litigation, a report by an insurer's agent to assist its counsel, and, it has been held, a report of a casualty by an insurer to the insurer's agent and delivered by him to its counsel to prepare a defense to a possible lawsuit."

Notwithstanding, however, the privileged character of the written report, it is clear that the fact that defendant had made the report would not prevent compelling him to testify as to his knowledge or information as to the events of the accident.

---

[4] *Tomek v. Farmers Mut. Automobile Ins. Co.* (1955), 268 Wis. 566, 569, 68 N. W. (2d) 573.

[5] *Wojciechowski v. Baron* (1957), 274 Wis. 364, 368, 80 N. W. (2d) 434.

Of course the propriety of compelling answers to a particular question may depend in part upon the record which is developed before the question is asked and the ruling of the circuit court to which exception has been taken was made in general terms. As a general principle we conclude that a claim of privilege may properly be interposed if one of these experts is asked to disclose a communication which he has made as a consultant employed by the highway commission to the commission or its staff or counsel in connection with the condemnation of plaintiffs' property, but the attorney-client privilege does not preclude these experts from disclosing the relevant opinions they have formed, whether reported or not, and the observations, knowledge, information, and theories on which the opinions are based.

5. *Work product under the Hickman Case.* Rule 26 of the Federal Rules of Civil Procedure provides broadly, as does our present sec. 326.12, Stats., for taking the deposition of any person, whether a party or not. In 1947 the supreme court of the United States decided that the rule did not contemplate compelling an attorney to produce what was termed the "work product of the lawyer." [6] The work product there under consideration consisted of written statements of witnesses and the lawyer's memoranda and mental impressions of oral statements of witnesses. The court decided that this material fell outside the scope of the attorney-client privilege. A conflict was found, however, between an interpretation of the rule broad enough to permit discovery of such material under ordinary circumstances and a policy of privacy of preparation by the lawyer which the court considered essential to an orderly conduct of our system of legal procedure. It was said, at page 510:

"Here is simply an attempt, without purported necessity or justification, to secure written statements, private

---

[6] *Hickman v. Taylor* (1947), 329 U. S. 495, 67 Sup. Ct. 385, 91 L. Ed. 451.

memoranda, and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."

Some federal courts have held that the work and conclusions of an expert retained by the party or attorney are properly classified as work product under the *Hickman* decision.[7] The court of appeals of the Sixth circuit, however, has held that an expert in X-ray metallography engaged by counsel to make certain tests and X-ray photographs of samples of metal in preparation for the trial of a patent case could be compelled to testify at the instance of another party. It was said that the obvious purpose of the rules "gainsays the thought that the attorney-client privilege should be liberally extended to cover information sought of one who is not a lawyer, but has merely been retained by an attorney at law as an expert in a scientific field. The primary concern of courts of justice is to elicit truth essential to correct adjudication."[8] In the case before us it is the deposition of the expert which is sought rather than access to the files or impressions of the attorney. To whatever extent the principle of the *Hickman Case* is to be followed in limiting discovery procedure in this state, we conclude that it provides no basis for refusing plaintiffs the opportunity of examining these expert witnesses concerning the relevant opinions they have formed, and the observations, knowledge, information, and theories on which the opinions are based.

---

[7] For example: *Carpenter-Trant Drilling Co. v. Magnolia Petroleum Corp.* (Neb. D. C. 1959), 23 F. R. D. 257. See also 43 Marquette Law Review, 329, and cases cited.

[8] *Sachs v. Aluminum Co. of America* (6th Cir. 1948), 167 Fed. (2d) 570.

6. *Compelling testimony of experts.* Relators contend that experts have a personal right to refuse to testify concerning matters of expert knowledge and opinion, citing authorities from other jurisdictions.[9]

In what may be *obiter dictum* this court has taken a different position.[10] The court said in the opinion in *Philler*, at pages 214, 215, 216:

"This is the real field of expert evidence. It is there that the expert can testify and the nonexpert cannot. But here also the expression 'expert' is of very broad meaning. It includes the mechanic, whose opinion may be asked upon the strength or value of a brick wall or chimney, or the farmer, with reference to quality and value of lands, crops, or farm animals, as well as the man of most-abstruse research and learning in the fields of chemistry and bacteriology or medicine. So here, again, no line can be drawn on principle between the men or the testimony in favor of a physician over a bricklayer. It would seem on principle, in analogy to the previous discussion, that if from the witness' observation or from the hypothetical facts stated to him he has consciously in mind either knowledge or an opinion, such knowledge or existent opinion is a fact as to which he may be required to testify; but, as is often the case, and in the higher branches of expert learning perhaps usually, an amount of study, experimentation, thought, and reflection may be necessary to the formation of an opinion, and the witness may often honestly answer that he has not formed such opinion. The chemist, after submitting a substance to various analyses and reactions, may yet need to study the books or make further experimentation before he can assert the presence or absence of certain elements. The physician, after exhaustive inspection and tests, is still often left in doubt, and does not venture an opinion to his patient until after long study. Such study, reflection, etc., is not the function of the ordinary witness. It is not within the

[9] See Anno. 2 A. L. R. 1573; 77 A. L. R. (2d) 1182, and *People ex rel. Kraushaar Bros. & Co. v. Thorpe* (1947), 296 N. Y. 223, 72 N. E. (2d) 165.

[10] *Philler v. Waukesha County* (1909), 139 Wis. 211, 120 N. W. 829.

command of the subpoena, and there is no reason to think that the statutes were intended to require it of any witness merely as such. If a party desires that any witness, expert or otherwise, equip himself with knowledge by research or inspection, it may employ him to do so, but such employment will be controlled by the ordinary rules of contract, express or implied. . . .

"The result of these cases is that the expert, be he mechanic, physician, engineer, or chemist, must obey the subpoena of the court and must testify to such facts as are within his knowledge, whether these facts may have required professional learning, study, or skill to ascertain them or not. If, when placed on the witness stand, he has such knowledge, he must testify to it. They substantially all recognize, however, that the subpoena under statutes like ours does not compel the expert nor other witness to equip himself by labor with ability to testify either to an opinion or to any other fact which might be ascertained by special services, and hence that from the mere subpoena and compulsion to testify as a witness results no implied contract upon any one to pay the expert anything in excess of the statutory fees, recognizing, however, that, if he does perform work in preparation and qualification to enable him to testify at the request of any person, implied contract for reasonable compensation may arise, or an express contract will be valid."

It might be argued on the basis of the statements in the *Philler Case*[11] that an expert who had formed an opinion after investigation at the request and expense of one patron might be compelled to state that opinion in a case in which the patron was in no way involved and under a subpoena obtained by a stranger. This was the situation in the *Kraushaar Case,*[12] where the court of appeals of New York held that no witness can be compelled to state an opinion as an expert against his will.

For the present it suffices to say that the extreme situation is not presented. Plaintiffs seek to examine experts who have formed opinions at the request and expense of the adverse

[11] *Supra,* footnote 10.
[12] *Supra,* footnote 9.

party, doubtless so that their testimony will be ready ammunition if needed upon the trial. We can see no invasion of the rights of the experts in such a situation if they are compelled to state the opinions they have formed and the relevant supporting information at an earlier stage of the action. Plaintiffs will gain an opportunity to prepare cross-examination and assemble rebuttal material. The highway commission will lose the advantage of withholding the testimony until the trial and presenting it when the plaintiffs have not had that opportunity.

In enacting sec. 326.12, Stats., in its present form, the legislature has decided to liberalize our discovery procedure. Such decision must be based upon the belief that trials will be more likely to accomplish justice between the parties, and may at times be avoided or shortened in the public interest as well, if material relevant testimony is made available to all parties before trial. In the light of this purpose we conclude that in the situation presented here the fact that the deponents are experts does not make the proposed examinations unauthorized by sec. 326.12.

7. *Notes in the possession of American Appraisal Company.* The American Appraisal Company, while appearing in the circuit court, is not a party to the original action now before us. We find no reason why the production of the notes by a custodian, in response to subpoena, would impair the rights of relators.

*By the Court.*—Writ of prohibition absolute denied. Writ of consultation authorizing the circuit court and plaintiffs Ruby to proceed in the action allowed.

The following opinion was filed March 6, 1962:

PER CURIAM (*on motion for rehearing*). The principal issue raised by the attorney general's brief on the motion for rehearing is that, to compel the two subpoenaed witnesses,

Gutschenritter and Koepp, to give expert testimony for a witness fee of $5 each, as required by the trial court's order, violates their constitutional rights. We quote from the state's brief as follows:

"On behalf of the appraisers, it must be said that such a procedure is depriving them of their work product, forcing them to give the results of their studies of comparable sales, and other work which went into their appraisals, and forcing them to spend their valuable time sitting in a courtroom for one or more days for the fee of $5, thus depriving them of not only their property, *i.e.*, their work product, but preventing them from doing other work through which they derive their living. This, we submit, would be in violation of the Fourth amendment of the United States constitution, which provides that there shall be no law abridging the right of the people to be secure in their persons, houses, papers, and effects, and in violation of the Fifth amendment, which provides persons may not be deprived of their property without due process of law and that private property shall not be taken for public use. Further, it would be in violation of sec. 13, art. I of the Wisconsin constitution, which states 'the property of no person shall be taken for public use without just compensation therefor.' "

We accept as true the attorney general's statement that the state has not undertaken to compensate Gutschenritter and Koepp for the time they may have to spend in complying with the command of the subpoena and order of the trial court. The nature of the records and documents, listed in the subpoena *duces tecum* and the court's order, clearly indicates that the two witnesses will be required to give expert testimony. In all likelihood it will be necessary for them to study their previously prepared data in order to give such testimony.

This being the situation, we deem it oppressive to require these witnesses to appear and testify for a witness fee of $5 each. Sub. (3) of sec. 326.12, Stats., as re-created by ch. 113, Laws of 1961, provides:

*"Orders for the protection of deponents.* After notice is served for taking a deposition, upon motion reasonably made by any party or by the person to be examined, and, upon notice and for good cause shown, the court may make an order that the deposition shall not be taken, or that certain matters shall not be inquired into, or *any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."* (Italics supplied.)

The 1961 legislature also saw fit to amend sec. 271.04 (2), Stats., to permit taxation of $25 costs for expert witness fees. Ch. 326, Laws of 1961. We determine that it would be proper, upon application to the circuit court in behalf of Gutschenritter and Koepp, for that court to order that these two witnesses be compensated further by the landowners as a condition to requiring them to give testimony by way of deposition under sec. 326.12, as now amended. It lies within the competence of the trial court to fix such compensation at whatever sum that court deems reasonable, but not to exceed $25 per day.

The reason this court does not amend its mandate to so provide is that the only relief sought here was an absolute writ prohibiting the taking of the depositions.

The motion for rehearing is denied without costs.