SECURA INSURANCE COMPANY, Plaintiff,

v.

WISCONSIN PUBLIC SERVICE CORPORATION,
Defendant.

James KVATEK and Carol Kvatek, Plaintiffs,

v.

WISCONSIN PUBLIC SERVICE CORPORATION,
Defendant-Third Party Plaintiff-Respondent,

v.

Daniel KOWALSKI, d/b/a Kowalski Heating & Cool-
ing Center, and West Bend Mutual Insurance Com-
pany, a Wisconsin insurance corporation, Third Party
Defendants-Appellants.

Court of Appeals

*No. 89-0542-FT. Submitted on briefs August 11,
1989.—Decided May 17, 1990.*

(Also reported in 457 N.W.2d 549.)

For the third-party defendants-appellant the cause was submitted on the briefs of *Russell T. Golla* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

For the plaintiff-respondent the cause was submitted on the brief of *Mark S. Henkel* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Stevens Point.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. In this appeal, we decide that naming an expert witness pursuant to a scheduling order without retaining the witness does not prevent another party from employing the witness. We further hold that the trial court may disqualify an expert witness if it is shown that retention of the witness creates a conflict of interest. Because no conflict of interest was shown, the trial court abused its discretion when it disqualified C. Frederick Quest as an expert witness.

On November 17, 1988, pursuant to the court's scheduling order, Wisconsin Public Service Corporation by letter to Kowalski Heating and Cooling Center named Quest as an expert witness. According to Quest's affidavit, however, WPSC inquired as to Quest's expertise and availability, but did not retain him. Thereafter, WPSC did not retain Quest or provide him with any materials relating to the case.

On January 19, 1989, Kowalski inquired as to Quest's areas of expertise and experience. Quest advised Kowalski that he had not been retained by any party to the litigation. Kowalski then orally retained Quest as its consulting expert and possible expert witness. The same day, Kowalski's counsel reviewed the file and discovered that WPSC had named Quest as an expert witness. Kowalski's counsel again asked Quest whether he had been retained by WPSC. Quest stated that he had not

been retained. By letter of January 20, 1989, Kowalski confirmed Quest's employment as its consulting engineer and possible expert witness. Counsel provided Quest with copies of depositions to obtain Quest's expert opinion.

When WPSC learned that Kowalski had retained Quest, it moved the circuit court to prohibit Kowalski or any other party to the litigation from employing Quest or obtaining information from him. The circuit court ordered that Quest not be employed as an expert witness by either WPSC or Kowalski.

Scheduling orders typically prescribe dates by which each party shall name its expert witnesses. Under sec. 802.11(1)(d), Stats., the trial judge, at a pretrial conference, may order the parties to exchange names of expert witnesses. Section 907.02, Stats., provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

██

"A trial court has considerable discretion in the conduct of a trial, and its rulings will not be disturbed unless a party's rights have been prejudiced." *Wengerd v. Rinehart,* 114 Wis. 2d 575, 580, 338 N.W.2d 861, 865 (Ct. App. 1983). A trial court may disqualify a person as an expert witness if it is shown that retention of the person creates a conflict of interest.[1]

---

[1]*See American Motors Corp. v. Huffstutler,* No. 88–CIV–212 (Ohio Ct. App. Mar. 9, 1990, *execution of judgment stayed* 552 N.E.2d 947 and *cert. granted* 51 Ohio St. 3d 713) (LEXIS, States library, Ohio file).

The trial court stated its reason for disqualifying Quest as follows:

> I think the record is cleaner if, in fact, both of you seek other experts, or additional experts, or replacement experts if you will in the area. I think that eliminates any taint, any problem whatsoever arising out of the incident, and I think that's the best way to handle it. There is no law in that that I am aware of, and that's the best resolution that I think we should have in the case.

The court's concern that there be no "taint" in the trial of this lawsuit is commendable and if WPSC's contact with Quest affected Quest's impartiality, the trial court properly disqualified him. We conclude, however, that the record does not support the court's disqualification of Quest.

██

An expert witness is not an advocate. "An 'expert' is a witness who is permitted to testify as to matters about which the trier of fact has insufficient personal knowledge to make the inferences necessary to arrive at a decision on the ultimate issues in dispute." D. Danner, *Expert Witness Checklists,* sec. 1:10 at 5-6 (1983).[2]

---

[2]The first use of "experts" dates to the fourteenth century when the medieval courts required the assistance of skilled persons possessing special knowledge or experience in a trade or craft that the court itself did not have. D. Danner, *Expert Witness Checklists* sec. 1:02 at 4 (1983). The expert did not achieve the status of a "witness" in the modern sense until the sixteenth century, "when legislation was enacted to provide for compulsory attendance and testimony of witnesses, and the modern method of proving cases by oral and real evidence in open court, as opposed to the personal knowledge of the tribunal, became the normal method of proof." *Id.* "The principal purpose of expert testimony was to provide the court with opinions or inferences

Experts "are generally accorded great credibility by the trier of fact." *Id.,* sec. 1:11 at 8. Thus, it is important that there be no "taint" or bias in the expert's testimony. The record does not, however, disclose such "taint" or bias.

WPSC advised the trial court that because of Kowalski's contact it could not use Quest as an expert witness. It stated that Kowalski's contact with Quest was "clearly inappropriate" and that "the fruits of that effort should not be permitted to poison this litigation." WPSC does not deny, however, that it did not retain Quest as its expert witness; it merely inquired as to Quest's expertise and availability. WPSC did not provide Quest with files, documents, depositions, records or any other materials relating to the matter in litigation.

Employment of expert witnesses is controlled by the ordinary rules of contract. *Philler v. Waukesha County,* 139 Wis. 211, 215, 120 N.W. 829, 831 (1909). A party, without making a contractual commitment to the expert witness, may not disable an expert from entering into a contract of employment with another party merely by naming the expert as a proposed witness. In the absence of evidence of a conflict of interest, the trial court should honor the expert witness's contractual commitment. If a party may disqualify an expert witness simply by naming him or her, the party may make it difficult, if not impossible where the area of expertise is narrow, for another party to prosecute or defend an action.

---

derived from the expert's skill, experience, or training in the subject matter at hand. Thus, at this early stage, the expert witness became accepted as a distinct and integral part of the common law judicial system." *Id.*

The trial court found that Kowalski's contact with Quest was innocent. The court also found that WPSC would not be prejudiced if Quest stayed in the case because WPSC had not provided Quest with any information respecting the case. The trial court, however, was "uncomfortable" in allowing the use at trial of another party's named expert. The trial court had no cause to be uncomfortable. WPSC failed to demonstrate that Quest had a disqualifying conflict of interest which prejudiced its rights. The trial court therefore abused its discretion in disqualifying Quest as an expert witness.

*By the Court.*—Order reversed.