# CHARLESTON.

D. B. EALY *v.* THE SHETLER ICE CREAM COMPANY,
*a Corporation*

(No. 6467)

Submitted November 5, 1929. Decided November 12, 1929.

*Erskine, Palmer & Curl,* for plaintiff in error.
*Martin Brown,* for defendant in error.

WOODS, PRESIDENT:

In an action of assumpsit, the plaintiff below, a physician and surgeon, sought to recover under a common count $500.00 from the defendant corporation for professional work and services performed by him at its request. The bill of particulars filed with his declaration sets out that such services were performed on the 18th, 19th and 21st days of January, 1928, and consisted of making an examination of Frederick Diab and conferences with the attorneys of the defendant and with other physicians and surgeons, in the case of George Diab against the defendant in the circuit court of Marshall county, West Virginia, which was tried on the 19th, 20th and 21st days of January, 1928. The instant case was by agreement of the parties submitted to the court in lieu of a jury. Judgment was rendered for the full sum sued for, and it is from this judgment that the defendant prosecutes a writ of error in this Court.

The evidence developed the following facts: that the said Frederick Diab, an eleven-year-old boy, was injured about the chest by falling or being knocked from a truck owned by the defendant corporation, and which corporation was sued by the father of the boy, to recover medical expenses, loss of services, etc., attendant on such injury; that the plaintiff below, who lived in Moundsville, the place of trial, was asked by one of counsel for the defendant in the Diab action to make, in association with a physician from Fairmont, a physical examination of the boy with a view of being called and used as a witness in the case as to the extent of the boy's injuries and physical condition; that the plaintiff here made an examination, which, with the consultation with the Fairmont physician and the examination of a number of X-ray plates, took some two hours time, appeared in court in response to a summons duly issued, and was on the stand as a witness part of one afternoon; and, that the trial in the Diab damage case lasted three days. It may be observed in passing that the plaintiff at first rendered his bill for services for $250.00, but on being refused payment by the defendant, instituted his action for double that amount. The plaintiff itemized his services as follows: For making the physical examination of the boy, $10 to $25; for the time spent in studying for the case the sum of $75; and for his fee for time spent in court at $200 per day, "including everything, loss of * * * practice, and loss of time from * * * operations at the hospital and loss of * * * meals". Thus is evinced a main purpose to recover against the defendant compensation for services for attending court as a witness in said damage case, testifying as an expert, and consequent loss of time in so doing. This raises the question of the status of the expert witness in so far as his compensation is concerned. May such person who testifies as such on behalf of a litigant demand compensation in addition to the usual fees allowed witnesses?

At common law witnesses were required to attend court without pay. However, generally under statutes in nearly all the states they are allowed compensation. The effect of our statutes is to require all persons to obey the subpoena

of a court, and apply alike to criminal and civil cases. Code, Chapter 162, section 1. The compensation to the witness for such obedience is fixed at one dollar per day for each day's attendance and five cents per mile for each mile necessarily traveled to the place of attendance, and the same for returning, besides tolls exacted of him on his journey to and fro at bridges, ferries and turn-pike gates. Code, Chapter 130, section 40. Witnesses may be proceeded against for failing to appear and compelled to attend by attachment under rule. The only exception to this compulsory process is where a witness in a civil case upon summons being served upon him, demanded payment of witness fees and he was not paid within a reasonable time before he was required to attend, allowance for one day's attendance, and his mileage and tolls. Code, Chapter 130, section 27. This compensation of witnesses is not intended to pay for their testimony, but rather to make good to them the loss and expense consequent upon their leaving their homes and occupations to attend court. This review of our statutes shows that there is no provision made for special compensation for a witness called to give expert testimony in either civil or criminal cases. The duty of every witness is to attend as long as commanded, and to testify to all material facts within his knowledge. This proceeds on the basic principle of constitutional government that the administration of justice is a mutual benefit to all members of a community, and every competent citizen is under an obligation to further it as a matter of public duty when summoned by due process of law. 40 Cyc., p. 2186, states the general rule to be: "Apart from statute, an expert witness may be compelled to testify as to matters of a professional opinion, or matters to which he has gained special knowledge by reason of his professional training or experience, without any compensation other than the fee of an ordinary witness." See cases there cited. Therefore, as to facts within his knowledge, a physician or surgeon, or other scientific or professional witness stands upon an equality with other witnesses.

The statute, as we have shown, has fixed the compensation for witnesses, and it is a rule general in its application that

where a duty is imposed by law and the compensation for its performance is fixed by law, that no greater compensation can be exacted or enforced. Bishop on Contracts, sec. 47. This rule was applied to a claim of a witness at an early day in England in the case of *Collins* v. *Godefroy*, I. B. & Ad. 950, where it was said: ''If it be a duty imposed by law upon a party regularly summoned to attend from time to time to give his evidence, then a promise to give any remuneration for lost time incurred in such attendance is a promise without consideration.'' As a logical sequence, a witness has no legal right to recover on a *quantum meruit* for services rendered under the requirements of the law. This doctrine is given expression in *Dodge* v. *Stiles,* 26 Conn. 463, which has been looked upon by the courts of the country as the leading case in support of this principle. The court there gives expression to the following cogent reason for such holding: ''Were it otherwise, and witnesses might be allowed to make terms for testifying, there would be room for oppressive conduct and for corruption. Witnesses knowing that their testimony was indispensable would, under one pretense or another, make represent their testimony was important would be tempted terms for their testimony, and such as might be induced to to barter their oaths at the expense of truth and justice.'' But the great majority of the cases put the ruling on the ground that such contract is against public policy, holding that it is part of the duty of every citizen to give his services in testifying in any court proceeding when he is properly summoned to performance of that duty. Therefore, upon either theory, any agreement which a witness may exact from the person desiring his testimony to compensate him for time or services beyond the statutory fees is unenforceable.

Applying the foregoing principle of law to the evidence in the instant case, such part of the testimony as sought to establish the plaintiff's right to compensation for the loss of three days' time in attendance upon the court at the trial in which he was a witness was improper, and a judgment based thereon cannot stand. Of the amount sued for, he based his right to recover on the basis that he was entitled to receive one

hundred and fifty dollars per day for the time consumed by the trial. It will be observed that a major part of his recovery must have been based on this improper evidence. Again, consonant with the decisions, a contract to pay a witness for testifying coupled with the condition that the right of compensation depends upon the result of the suit in which his testimony is used, is contrary to public policy and void for the reason that it leads to perjury and the perversion of justice. *Clifford* v. *Hughes,* 139 App. Div. 730, 124 N. Y. S. 478; *State* v. *Nickerson,* 114 Neb. 423, 45 A. L. R. 1418; *Miller* v. *Anderson,* 183 Wis. 163, 34 A. L. R. 1529; *County of Campbell* v. *Howard,* 133 Va. 19. The plaintiff in this case kept to the fore in the evidence the fact that the defendant was successful in defeating the plaintiff in the suit in which he testified. His cross-examination contains this colloquy between him and the opposing counsel: "Q. It is a fact, then, that you are trying to get five hundred dollars * * * because you thought you helped it win a law suit? A. I know I helped it win a law suit. Q.. And it was on that knowledge, and what you thought was that knowledge, that you based your fee? A. It certainly was. Q. Your fee was not based then on your actual services but on what you thought it was worth for winning a law suit? A. It was based on both." This testimony clearly falls beneath the ban of the last cited authorities.

So, in performing such service as every other citizen of the state performs perforce of the statute, the physician may not demand any extra compensation. His time is claimed by the public as a tax paid by him to that system of law which protects his rights as well as those of others. The only compensation, beyond the usual witness fees, he may get, is the approbation which comes to all who "have done the State some service." But, while this is true, he may not be required to make any examination or preliminary preparation that he may be better able to give his opinion as an expert. For any service of this kind (it not falling within the rule of the duties of an ordinary witness), he may demand extra compensation. If the service required of the expert is such that he cannot

be compelled to render it under the ordinary process of the court, an agreement by the one seeking the service to compensate the expert for it, is valid. So, in *Tiffany* v. *Kellogg Iron Works,* 109 N. Y. S. 754, it was held that, where a civil engineer, upon the request of a party to an action, performed services in making investigations to qualify himself as an expert witness in the party's behalf, he was entitled to recover the reasonable value of the time and labor spent by him in making the investigation, as it does not come within the service which the law compelled him to give as witness for the statutory fee. That this rule would apply to a physician under like circumstances is obvious. The authorities holding this doctrine in various forms are numerous. *Barrus* v. *Phaneuf,* 166 Mass. 123, 32 L. R. A. 619; *Burnett* v. *Freeman,* 125 Mo. App. 683; *Schofield* v. *Little,* 2 Ga. App. 286; *Flinn* v. *Prairie Company,* 60 Ark. 204, 27 L. R. A. 669; *Brown* v. *Insurance Company,* 26 App. Div. (N. Y.) 544; Note, 16 A. L. R., p. 1463.

Tested by the rules we have announced, the plaintiff is left in this case to assert solely what would be a proper charge for the examination he made of Diab prior to the trial and for the time spent in preparation of his testimony in connection with such examination; provided, of course, that there was a contract made with the defendant corporation, either express or implied, to perform such service. As this case must go back for another trial, we deem it unnecessary to decide the question of the existence or non-existence of such a contract from the record made here.

*Reversed and remanded.*