## Richmond

BEN COOPER AND MARY T. COOPER v. NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY.

January 16, 1956.

Record No. 4435.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Russell T. Bradford* and *H. Warrington Sharp*, for the plaintiffs in error.

*Baird, White & Lanning* and *Guilford D. Ware*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The only question on this appeal is as to the right of the appellants, property owners, to have an expert appraiser testify as to his opinion of the value of the property sought to be condemned by the Authority, appellee, in an eminent domain proceeding. It arises on these facts, as certified by the court:

At the hearing before the commissioners, duly appointed to ascertain the compensation to be paid the owners for the property to be taken, two experienced realtors were called as witnesses by the Authority, one of whom testified that the fair market value of the property was $9,435 and the other that it was $9,039. For the owners one witness, an experienced employee of the rental agents for the property, testified that the property was worth $13,000; another, a realtor of wide experience, placed its value at $14,145; a third, a real estate dealer and licensed broker, testified that the owners were offered $14,000 in 1945, since which time there had been some improvements and he valued the property at $16,000. In rebuttal a negotiator for the Authority testified that he did not think the property was worth $10,000.

The commissioners reported an award of $10,000 as compensation to the owners, their report was confirmed over the objection of the owners, who now assign as error that the award was contrary to the law and the evidence, and that the court erred in not requiring Robert F. Baldwin, Jr., to testify.

The evidence as certified shows that Mr. Baldwin was summoned by the owners to testify before the commissioners as an expert. He appeared and was duly sworn along with the other witnesses. When he was called by the owners to testify, counsel for the Authority objected and moved to quash the subpoena, stating that during the pendency of the proceeding the husband of one of the owners came to his office and inquired whether there was some way by which an agreement as to value might be reached. In response counsel for the Authority agreed to have the property appraised a third time by a person from the Authority's panel of appraisers agreeable to both the owners and counsel for the Authority. "It was made perfectly clear that condemnor would do this at its expense in an effort to meet the landowners' views, and that neither the landowners nor the condemnor would be bound by the result." When the name of Robert F. Baldwin, Jr., was mentioned as being on the regular panel (Authority's Brief), the husband assented. Mr. Baldwin reported to both parties that his appraisal was $13,000. He was eventually paid by the Authority for his services.

The court overruled the Authority's motion to quash the subpoena and stated he would leave the matter to the witness as to whether he would testify. The court then told Mr. Baldwin in chambers that he did not have to testify unless he wanted to, and he replied that he

would rather not, explaining that he was on the Authority's regular panel of appraisers, had testified in its behalf in many cases, that he and the members of his firm had consistently refused to accept employment in any matters which might involve them in an inconsistent or conflicting position with the Authority, and he did not want to testify for the owners in this case for the same reason, as he thought it would be unfriendly and unfair to the Authority, in whose employ he still remained. The owners offered to compensate Mr. Baldwin for his services, or to reimburse the Authority if it had already paid him. The court informed counsel for the landowners that Mr. Baldwin could be compelled to testify to all of the facts that he observed when he viewed the premises. The owners made no request that he do so and the court thereupon excused him from testifying.

There is a conflict among the decisions as to the right of an expert to decline to give his expert opinion when called to testify on matters under judicial inquiry. Apparently a majority of courts which have dealt with this question hold that the expert may be compelled to testify as to an opinion he is qualified to give by reason of his prior training and experience and without having to make any special preparation to qualify to do so. Many of the cases taking that view have involved the right of the expert to demand extra compensation for testifying.

*Ex Parte Dement*, 53 Ala. 389, 25 Am. Rep. 611, is a leading case among those holding that the expert is not entitled to an unqualified privilege. The question there was whether a physician was in contempt for refusing to testify as an expert without special pay. In holding that he was, the court concluded that "the same principle which justifies the bringing of the mechanic from his work-shop, the merchant from his store-houses, the broker from 'change, or the lawyer from his engagements, to testify in regard to some matter which he has learned in the exercise of his art or profession, authorizes the summoning of a physician, or surgeon, or skilled apothecary, to testify of a like matter, when relevant to a cause pending for determination in judicial tribunal." The court observed that the decisions of courts concerned the property, reputation, liberty or lives of men, and it was "of vital public interest that the tribunals which pronounce these judgments shall have power to coerce the production of any relevant evidence existing within the sphere of their jurisdiction, requisite to prevent them from falling into error."

But it was not intended, said the court, to assert that a physician or

surgeon would be in contempt for refusing, unless paid therefore, to make a *post-mortem* examination or do other work requiring skill and special professional training in order to qualify himself to testify. It was said further that the English cases holding that the expert was entitled to demand extra compensation before testifying to an expert opinion were influenced by the statute of 5 Eliz., ch. 9, providing that a witness must have tendered to him "according to his countenance, or calling, his reasonable charges."*

The courts of Pennsylvania, New York, New Jersey and Indiana hold differently.

*Pennsylvania Co.* v. *City of Philadelphia*, 262 Pa. 439, 105 A. 630, 2 A. L. R. 1573 (Anno. at 1576), on which the court below based its holding, was an eminent domain case in which the defendant city called two real estate men as expert witnesses who objected to testifying because of their employment by and report to the plaintiff, from which employment they had not been released. Their objection was sustained, the court saying:

"* * The process of the courts may always be invoked to require witnesses to appear and testify to any facts within their knowledge; but no private litigant has a right to ask them to go beyond that. The state or the United States may call upon her citizens to testify as experts in matters affecting the common weal, but that is because of the duty which the citizen owes to his government, and is an exercise of its sovereign power. * * But the private litigant has no more right to compel a citizen to give up the product of his brain than he has to compel the giving up of material things. In each case it is a matter of

---

* In 1 Greenleaf on Evidence, 16 ed., by Wigmore, page 471, it is said that there is a distinction, with reference to the privilege of refusing to testify without extra compensation, between a witness to facts and a witness selected by a party to give his opinion on a subject with which he is peculiarly conversant from his employment in life; that the former is bound, as a matter of public duty, to testify as to facts within his knowledge; the latter is under no such obligation, "and the party who selects him must pay him for his time, before he will be compelled to testify." Wigmore, however, adds: "But though this distinction may once have been the common law of England, it has been almost universally repudiated in this country." See also 8 Wigmore on Evidence, 3 ed., § 2203, p. 130.

For similar holdings see *Dixon* v. *People*, 168 Ill. 179, 48 N. E. 108, 39 L. R. A. 116; *Flinn* v. *Prairie County*, 60 Ark. 204, 27 L. R. A. 669, 29 S. W. 459; *Ealy* v. *Shetler Ice Cream Co.*, 108 W. Va. 184, 150 S. E. 539; *In Re Hayes*, 200 N. C. 133, 156 S. E. 791, 73 A. L. R. 1179; *Philler* v. *Waukesha County*, 139 Wis. 211, 120 N. W. 829, 25 L. R. A. (N. S.) 1040; *San Francisco* v. *Superior Court*, 37 Cal. (2d) 227, 231 P. (2d) 26, 25 A. L. R. (2d) 1418; and additional cases cited in *People* v. *Thorpe*, 296 N. Y. 223, 72 N. E. (2d) 165, referred to below; also Rapalje on Witnesses, § 307, p. 531; Rogers on Expert Testimony; 3 ed., § 318, p. 796; 3 Jones on Evidence, 4 ed., § 798 a., p. 1468.

bargain, which, as ever, it takes two to make, and to make unconstrained. * * ." 105 A. at 630.

*People* v. *Thorpe*, 296 N. Y. 223, 72 N. E. (2d) 165, referred to in note *ante*, was a tax assessment case in which the property owner summoned an expert witness who had previously appraised the property for a prior owner. The plaintiff sought to have him testify as to the value of the premises, but he refused, stating that he did not wish to take part in the case. The court held that while he was required to testify as to what he had seen on the premises, he had a right to refuse to answer any question connected with his experience and judgment as a real estate expert and not as an ordinary lay witness. The court said that the rule in those States, citing the cases, which required experts to give professional opinions but limited to opinions which they were able to give without study of the facts or other preparation, was quite unsatisfactory; that "(I)n the realms of medicine, law, science, and many other callings where highly specialized knowledge is essential, only the most eminent are competent to answer ex tempore and defend impromptu opinions upon cross-examination, but none, without reflection upon his professional ability, may confess ignorance;" and the better rule was not to compel a witness to give his opinion as an expert against his will.

See also *Stanton* v. *Rushmore*, 112 N. J. L. 115, 169 A. 721; *Buchman* v. *State*, 59 Ind. 1, 26 Am. Rep. 75.

The question so dealt with in other jurisdictions has not been decided in Virginia. We have, however, made some distinction between the opinion evidence of an expert and the evidence of a witness to facts in providing in our Rule 3:23 for a limitation upon the right to take the deposition of an expert under §§ 8-304 and 8-305 of the Code.

The reasoning of the authorities last above referred to is persuasive with respect to the situations dealt with, particularly as preventing the unfairness that could result from an unlimited right of a litigant to get evidence for himself from an expert employed by his adversary on ascertaining that the expert had given an opinion to his adversary which was unfavorable to the latter's case.

We limit our decision now, however, to the particular facts of the present case, which do not allow the application of an expert privilege rule so as to permit Mr. Baldwin to refuse to testify.

Admittedly the question of compensation is not here involved. He did not object to testifying on that ground and counsel for the Au-

thority say in their brief that there is no question in this case of compensation for appraising and testifying. While Mr. Baldwin was generally in the employ of the Authority, he did not appraise this property on this occasion solely as the Authority's employee. He made his appraisement pursuant to the agreement between the Authority's counsel and the representative of the owners. It was done pursuant to that agreement for the purpose of determining whether his opinion as to value would be such as both parties were willing to accept and thus avoid a contest in court. Neither party was to be bound by his report, but of necessity his opinion was to be made known to the owners, as well as to the Authority. Otherwise his appraisal would be a futile exercise and of no value in relation to the purpose for which it was agreed to be made. Without knowing his opinion as to value, neither party could decide whether a settlement could be made on the basis of it.

Mr. Baldwin obviously so understood his function and his relationship to the parties because, as stated above, he reported to both parties that in his opinion the value of the property was $13,000. There was thus no secret about his opinion; there was nothing confidential about it. Knowledge of it was imparted to both sides. There was no understanding about its use in evidence but neither was there any restriction or limitation placed upon his appraisal in that regard. The only understanding was that neither party would be bound by it. They could disregard it at will and let the matter be determined by the litigation. If his opinion so arrived at had been favorable to the Authority, there was no obstacle to the Authority's putting it in evidence before the commissioners. It follows, we think, that the owners had the same right to have him testify.

The order appealed from is reversed, the report of the commissioners is set aside and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*