## CIRCUIT COURT OF FAIRFAX COUNTY

John V. Cuesta

     v.

Stephen R. Shapiro
and Child Cardiology
Associates, P.C.

May 4, 2004

Case No. (Law) 217683

BY JUDGE ARTHUR B. VIEREGG, JR.

This matter came before me on April 16, 2004, on Plaintiff John V. Cuesta's motion to compel responses to certain questions posed to Defendant Stephen R. Shapiro, M.D., at his deposition on November 21, 2003.[1] During argument, I questioned the appropriateness of Ms. Mitchell's instructions to her client, Dr. Shapiro, not to answer the disputed questions, and indicated that the conduct might be sanctionable. Counsel for Dr. Shapiro addressed the question of whether this course of conduct was appropriate, as well as the issue of sanctions. After sustaining Dr. Shapiro's objections posed to the deposition questions at issue, I took the issue of sanctions under advisement and I advised counsel that each could file a brief on that matter. After considering the oral argument and reviewing the record and the brief filed by Ms. Mitchell,[2] I am prepared to give the parties my decision. It follows.

---

[1] The motion to compel was originally before Judge Thacher on Friday, March 19, 2004. However counsel reached the thirty-minute limit on oral arguments prior to concluding the motion. Judge Thacher ruled on the first three disputed deposition questions, which left seven questions for determination on April 16, 2004.

[2] I did not receive an additional brief on this matter from Mr. Cuesta's counsel, Mr. Hovis.

## I. *Brief Statement of Facts*

This medical malpractice action was filed on October 6, 2003: John V. Cuesta began seeing Dr. Stephen R. Shapiro in early 2003. On March 21, 2003, Dr. Shapiro attempted to perform a closure of a patent foramen ovale using a CardioSEAL device. Mr. Cuesta alleges that Dr. Shapiro negligently performed this implantation of the CardioSEAL device in his heart, because a release pin on the CardioSEAL became stuck and the device had to be removed. Mr. Cuesta maintains that Dr. Shapiro was negligent both in his assessment that Mr. Cuesta was an appropriate candidate for such a procedure[3] and that Dr. Shapiro did not properly perform the procedure.

On November 21, 2003, Mr. Hovis conducted the deposition of Dr. Shapiro. During the deposition, Ms. Mitchell objected to various questions posed and instructed Dr. Shapiro not to answer those questions. Neither party moved to terminate or limit the examination of Dr. Shapiro as provided under Virginia Supreme Court Rule 4:5(c). The deposition concluded, and Mr. Cuesta filed the instant motion to compel Dr. Shapiro's responses to ten questions.

## II. *Sanctions for Instructing Dr. Shapiro to Refrain from Answering Certain Deposition Questions*

Ms. Mitchell argues that neither she nor her client should be sanctioned for Dr. Shapiro's refusal to answer deposition questions pursuant to her directions. Ms. Mitchell essentially advances three arguments to support the propriety of her directives to Dr. Shapiro not to answer the deposition questions under consideration. She therefore contends that sanctions are inappropriate.

First, she argues that Dr. Shapiro may not be compelled to provide expert testimony in the absence of an agreement with the party seeking such expert opinions. Ms. Mitchell maintains that Dr. Shapiro had not been designated as an expert witness in the case and that he had not agreed to disclose "the product of his brain." *Cooper v. Norfolk Redevel. & Housing Auth.*, 197 Va. 653, 656-58, 90 S.E.2d 788 (1956) (citing *Pennsylvania Co. for Insurances on Lives & Granting Annuities v. City of Philadelphia*, 105 A. 630 (1918)). Counsel for Dr. Shapiro cites several Virginia circuit court decisions for the proposition that a defendant physician may not be called to testify as to

---

[3] The Food and Drug Administration has approved certain devices as Humanitarian Use Devices, for which exemption applications are required. *See* 21 C.F.R. § 814.100 *et seq.* (2004). The CardioSEAL has been approved by the FDA as a HUD. *See* http://www.cardiology.med.ucla.edu/InterventionalCardiology/page6.html.

standard of care and expert opinions either at trial or during discovery. *See Tarver v. Columbia/HCA Healthcare Corp.*, Case No. CL98-1626 (Richmond Cir. Ct., Aug. 17, 1999); *Scott v. Decker*, (Richmond Cir. Ct. Nov. 17, 1986); *Hood v. Wedd*, Law No. 1137-86 (Chesterfield County Cir. Ct., May 16, 1986); *Speelman v. Schuler*, 4 Va. Cir. 304 (Newport News 1985); *Simpson v. Larson*, 1 Va. Cir. 223 (Pulaski County 1981). None of these cases, however, involved an attorney instructing her physician client not to answer questions at a deposition. In *Smith v. MCV Associated Physicians*, Case No. LB-117 (Richmond Cir. Ct., Aug. 29, 1996), the Richmond Circuit Court was, as here, confronted with a medical malpractice case, in which the defendant physician was being deposed. As here, the physician's attorney directed the client not to answer a question as to whether the physician then believed that the patient should have been hospitalized when complaining of shortness of breath when being treated by the defendant. After instructing the client not to answer, the plaintiff's attorney terminated the deposition. The circuit court judge held that instructing the physician not to answer was generally sanctionable but that it was necessary and appropriate when protection of a physician's proprietary opinions was involved. I respectfully disagree. In such circumstances, defense counsel may suspend the deposition in order to obtain a ruling before the questioning with respect to putative proprietary information continues. This might be accomplished by attempting to call a judge and deal with the matter on the phone with the court reporter attending the deposition making a record. Alternatively, the deposition might be suspended until the matter might be argued as soon as a judge is available.[4] To the extent that *Smith* is contrary to my above views, I respectfully disagree with the decision reached.

Second, although Rule 4:5(c) provides that "evidence objected to *shall be taken subject to* the objections," Va. Sup. Ct. R. 4:5(c) (emphasis added), Ms. Mitchell next argues that "shall" should be interpreted as directory rather than mandatory. However, the case relied upon, *White v. Morano*, 249 Va. 27, 452 S.E.2d 856 (1995), does not hold that the word "shall" in this context should be understood as merely permissive throughout all of the Rules. *Morano* does not address the Rule under consideration. Ms. Mitchell also argues that "shall" should be interpreted as directory, because when the Rules are read as a whole, Rule 4:5[5] and Rule 4:12[6] provide two mechanisms for a party or

---

[4] Furthermore, it should be emphasized that counsel *might* agree to continue the deposition as to other matters not implicated by, or connected with the disputed question.

[5] Rule 4:5(d) states that AAt any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the county or city where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the

deponent to seek relief related to the conduct of a deposition. Her argument is that, if the word "shall" were intended to be mandatory, the language in Rule 4:12(a)(2) permitting a discovering party to either complete or adjourn the deposition before moving to compel a response would not make sense. This construction of the Rule does not lead to such a conclusion that it is proper to instruct a deponent not to answer a question that has been objected to. It merely provides two approaches, one of which, adjournment, is appropriate under these circumstances.

Ms. Mitchell also maintains that, if the Rules mandate answering deposition questions, the attorney-client privilege and other privileges could not be adequately protected. However, Rule 4:1(b)(1) plainly states that "parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." Va. Sup. Ct. R. 4:1(b)(1). Therefore, Rule 4:1 expressly protects privileged information from discovery. *See Egelston v. Chicago Journeyman Plumbers Local Union #130*, 657 F.2d 890 (7th Cir. 1981); *Ralston Purina Co. v. McFarland*, 550 F.2d 967 (4th Cir. 1977); and Va. Sup. Ct. R. 4:5(d) (2004); *accord Kerr Contracting Corp. v. Rector & Visitors of George Mason Univ.*, 25 Va. Cir. 403 (1991) (acknowledging only privilege and trade secrets as appropriate topics to instruct a deponent not to disclose); and *Aetna Casualty & Surety Co. v. Corroon & Black, Inc.*, 10 Va. Cir. 207 (1987).

In *Ralston Purina Co. v. McFarland*, the Fourth Circuit reviewed a trial court's denial of a motion to compel a party to respond to questions posed at his deposition, which his counsel instructed him not to answer. *Ralston Purina Co.*, 550 F.2d at 973-74. The Court stated that:

> The action of plaintiff's counsel in directing Wagnon not to answer the questions posed to him was indefensible and utterly at variance with the discovery provisions of the Federal Rules of Civil Procedure. The broad scope of discovery is evident in Rule 26(b)(1) which provides that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

---

deposition or may limit the scope and manner of the taking of the deposition as provided in Rule 4:1(c). . . . Upon demand of the objecting party of the deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order.≅ Va. Sup. Ct. R. 4:5(d).

[6] Rule 4:12(a)(2) provides that: "if a deponent fails to answer a question propounded or submitted under Rule 4:5 . . . the discovering party may move for an order compelling an answer. . . . When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order." Va. Sup. Ct. R. 4:12(a)(2).

*Id.* at 973 (quoting Fed. R. Civ. P. 26(b)(1)). Ms. Mitchell argues that the Federal Rules of Civil Procedure and the Rules of the Virginia Supreme Court differ significantly in that Rule 30(d) expressly limits the instances in which a person can instruct a deponent not to answer to the preservation of a privilege, enforce a court ordered limitation or present a motion pursuant to Rule 30(d)(4). *See* Fed. R. Civ. P. 30(d)(4). It is asserted that, because Rule 4:5 does not contain such a provision, no limitation exists on when an attorney can advise her client not to answer a question. However, adopting such a limitless view would permit an attorney to stymie discovery by depositions by interposition of any objection coupled with an instruction that the deponent not answer. I conclude that the reasoning of the *Ralston Purina* decision is persuasive as to depositions taken under Rule 4:5(c).

Third, Ms. Mitchell argues that case law is developing that holds that a defendant physician may refuse to respond to deposition questions seeking standard of care and expert opinions. She relies on two Richmond Circuit Court decisions holding that the defendant physicians may refuse to answer such deposition questions if instructed by counsel not to do so. *See Smith v. MCV Associated Physicians*, Case No. LB-117 (Richmond Cir. Ct., Aug. 29, 1996) (sustaining defendant physician's objection to the deposition question on the basis that it required him to provide opinion testimony without his prior agreement); *Groome v. Tri-City Radiology Associates, Inc.*, Case No. LW-1228-1 (Richmond Cir. Ct., Feb. 3, 1994) (denying plaintiff's motion to compel defendant physician to answer a question that would "involve the defendant's offering an opinion against himself" ). As noted above, in *Smith*, the plaintiff suspended the deposition after defendant physician's counsel instructed him not to respond to an objectionable question. The court sustained the objection, and it expressly noted its disapproval of counsel's action in instructing the client not to respond. Nevertheless, it held that such a refusal was the only way for the physician to protect "proprietary" information. As discussed, adjournment affords any protection necessary. In *Groome*, it is not clear when the motion to compel was brought by the plaintiff against the defendant physician. Furthermore, while the court sustained the objection to the deposition question posed, the court did not address the propriety of the attorney's directive to the client not to respond. In a third case, *King v. Whitten*, Law No. 9030 (Rockingham County Cir. Ct., Nov. 12, 1992), the court denied plaintiff's motion to compel defendant physicians' answers to interrogatories seeking expert opinions. The court also ruled that the defendants could not be compelled to answer deposition questions attempting to elicit expert opinions over their objections. It is unclear from the opinion whether this ruling limiting the scope of deposition questions was prior to the deposition under Rule 4:1(c) or arose under a Rule 4:5 or 4:12 motion.

Moreover, in both *Tri-City* and *King*, it was not clear that the circuit court condoned the directive of an attorney to a witness not to answer the deposition questions. These decisions do not create authority so persuasive as is advocated on behalf of Dr. Shapiro.

For the foregoing reasons, I conclude Ms. Mitchell's instructions to Dr. Shapiro not to respond to deposition questions were improper in the absence of suspending the deposition to seek relief pursuant to Rule 4:5(d), as was done by the Plaintiff in the *Smith* case. Indeed, counsel might have sought a ruling from a judge of this court, if available.

## III. *Conclusion*

In light of the foregoing, because I sustained the objections Ms. Mitchell asserted to the disputed deposition questions posed to Dr. Shapiro and because Mr. Cuesta did not raise or pursue the issue of sanctions as to the directions not to testify, I will not award monetary sanctions against Ms. Mitchell. However, as noted in the *Ralston Purina* case and in Rule 4:5(d), the appropriate course of conduct would have been to note the objection to the question on the record and permit the evidence to be taken or to move for relief as provided under Rule 4:5(d).